David John Borcicky ("the former husband") and Nancy Marie Borcicky ("the former wife") were divorced by a judgment of the Baldwin County Circuit Court on October 1, 1996. Among other things, the divorce judgment awarded custody of the parties' minor child to the former wife subject to a liberal schedule of visitation by the former husband, ordered the former husband to pay monthly child support in the amount of $954.78, ordered the former husband to pay an alimony arrearage in the amount of $14,560 through September 30, 1996, and to pay the former wife $885 in monthly periodic alimony.
On July 13, 1998, the former husband filed a petition for modification and a motion for rule nisi alleging that his monthly income had changed and seeking a reduction in child support and an order holding the former wife in contempt for refusing to allow him visitation as provided in the divorce judgment. On October 7, 1998, the former husband filed an amended petition for modification alleging that the former wife was cohabiting with a man and seeking a termination of periodic alimony. The case was tried in two hearings on December 15, 1998, and March 23, 1999. On April 9, 1999, the trial court entered a judgment which stated, in pertinent part:
 "This cause came on for hearing on March 23, 1999 on [the former husband's] motion to Modify Child Support, to enforce visitation and for termination of alimony due to cohabitation by the [former wife] and the Court having heard the testimony ore tenus and having considered the evidence therein, it is hereby order and decreed as follows:
 That [the former husband] has consistently and willfully disobeyed Orders and Decrees of this Court which has placed Respondent in a dire financial situation and as a result [the former husband] comes into this Court with unclean hands. Accordingly, [the former husband's] request for relief is hereby denied."
On appeal, the former husband argues (1) that the trial court erred in denying the former husband's motion to terminate alimony, (2) that the trial court erred in denying his motion to reduce child support, and (3) that the trial court erred in refusing to enter an order holding the former wife in contempt for failing to allow visitation with his child.
The record reveals that since the divorce, the former husband has consistently underpaid, or refused to pay, the various financial obligations required of him by the divorce judgment. At the time of the first hearing, the evidence showed the former husband owed arrearages of approximately $6,000 in child support and approximately $30,000 in alimony. In addition, the former husband had made no payment toward his child's private school tuition as ordered by the divorce judgment and had allowed health insurance on his daughter to lapse without informing the former wife. He had refused to pay for the former wife's vehicle as ordered by the divorce judgment; the vehicle was repossessed. The record also shows that the former *Page 267 
husband had occasionally been incarcerated on weekends as a result of disregarding the court's orders requiring him to pay his various arrearages; while these incarcerations resulted in some payments on the arrearages, the arrearages continued to accumulate after his release.
The former husband admitted that he still found time for various fishing and gambling trips, and he acknowledged that he had used some of his gambling winnings to pay for a hair transplant as well as for payments on his child-support arrearage. The former husband gave a number of reasons for his failure to comply with the financial obligations of the divorce judgment, including a failure to pay for malpractice insurance that caused him to lose hospital work, and his claim that being incarcerated during some weekends had caused him to lose customers. He also testified to having large tax liens, which he blamed on the former wife's business operation of his office.
The record also shows that the former wife has a relationship with Frank Smith, and that she and Smith had lived together for at least one year prior to the first hearing in this case. The former wife also admitted that she and Smith had had sexual relations.
At the outset, we note that the trial court was within its authority to apply the equitable doctrine of "clean hands" to the former husband's petition for modification of child support.
 "The equitable principle of `clean hands' or that `he who seeks equity must do equity' is still appropriately viable even though the forms of common law equity actions have been deleted from practice. Cone v. Cone, 331 So.2d 656 (Ala. 1976). It has been said that the application of the `clean hands' doctrine is a matter peculiarly within the sound discretion of the trial court. Carter v. Carter, 282 Ala. 239, 210 So.2d 800
(1968)."
Hilson v. Hilson, 598 So.2d 955, 956 (Ala.Civ.App. 1992). Seealso Whitehead v. Whitehead, 707 So.2d 276 (Ala.Civ.App. 1997); King v. King, 636 So.2d 1249 (Ala.Civ.App. 1994).
Our review of the record shows strong support for the trial court's finding that "[the former husband] has consistently and willfully disobeyed Orders and Decrees of this Court." We therefore conclude that the trial court's denial of the former husband's requested reduction in child support as a result of his unclean hands was not an abuse of discretion.
However, we note that the trial court's power to apply equitable principles in matters of maintenance and support incident to divorce, see, e.g., Ex parte Thornton, 272 Ala. 4,127 So.2d 598 (1961); and Foster v. Foster, 365 So.2d 1227
(Ala.Civ.App. 1978), has been significantly limited by the Legislature with respect to one aspect of this case. In this case, the former husband has asserted that he is entitled to a termination of the periodic alimony ordered in the divorce judgment pursuant to §30-2-55, Ala. Code 1975. That statute provides:
 "Any decree of divorce providing for periodic payments of alimony shall be modified by the court to provide for the termination of such alimony upon petition of a party to the decree and proof that the spouse receiving such alimony has remarried or that such spouse is living openly or cohabiting with a member of the opposite sex."
In Russell v. Russell, 586 So.2d 12 (Ala.Civ.App. 1991), this court held that the operation of the above statute was not affected by a finding that the party petitioning for termination of alimony was in contempt of court at the time the petition was filed. The court in Russell discussed the application of § 30-2-55 as follows:
 "Upon petition of the husband and proof that the wife has remarried or is living openly or cohabiting with a member of the opposite sex, the trial court has the duty, under § 30-2-55, to terminate such alimony. See Tillis v. Tillis, *Page 268 405 So.2d 938 (Ala.Civ.App. 1981). Once the husband submits sufficient proof of the wife's living arrangement, as set out in § 30-2-55, the trial court is required to terminate the periodic alimony. Tillis. Such is the mandate of § 30-2-55."
586 So.2d at 13. The court in Russell concluded that the trial court did not, under § 30-2-55, have the discretion to simply refuse to consider the husband's petition to terminate alimony on the basis that he had, in effect, unclean hands.
We note that the trial court in Russell had expressly determined that the wife was cohabiting with another man. Although there is evidence in this case that could support a finding of cohabitation, the trial court in this case has made no such finding. The question whether cohabitation under § 30-2-55
has occurred is a question of fact for the trial court. Massey v.Massey, 678 So.2d 1146 (Ala.Civ.App. 1996); Ethridge v.Ethridge, 379 So.2d 87 (Ala.Civ.App. 1979). Accordingly, this case is reversed, and the cause remanded for the trial court to make a determination concerning whether the former wife is "living openly or cohabiting with a member of the opposite sex" so as to require the termination of periodic alimony. The judgment of the trial court in all other respects is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
YATES, MONROE, and THOMPSON, JJ., concur.
CRAWLEY, J., concurs in the result.