816 So.2d 1051 (2001)
Cheryl Abercrombie FLOYD
v.
William Olan ABERCROMBIE.
2990676.
Court of Civil Appeals of Alabama.
May 18, 2001.
Rehearing Denied July 13, 2001.
Certiorari Denied October 19, 2001.
*1053 Thomas D. Motley of Motley, Motley & Yarbrough, Dothan, for appellant.
Jere C. Segrest and Thomas M. Little of Hardwick, Hause & Segrest, Dothan, for appellee.
Alabama Supreme Court 1001906.
PER CURIAM.
Cheryl Abercrombie (the "mother") and William Olan Abercrombie (the "father") were divorced by an April 15, 1998, judgment of the trial court; the divorce judgment incorporated an agreement of the parties regarding alimony, property division, custody, and child support for the parties' two sons, Brad and Chad.
On February 16, 1999, Brad's 19th birthday, the mother filed a petition seeking postminority support for Brad and a modification of child support for Chad, who was then 17 years old. On May 12, 1999, the mother amended her petition to seek an award for a child-support arrearage, alleging in that petition that the father had failed to pay child support for Chad after February 1999.
After conducting an ore tenus hearing, the trial court entered a judgment awarding the mother a $2,000 child-support arrearage for Chad for the period of March 1999 through September 1999; terminating the father's obligation to pay child support for Chad for periods after September 1999, because Chad began living with the father at that time; and denying as untimely the mother's request for postminority support for Brad. The mother filed a postjudgment motion; the trial court denied that motion. The mother appealed.

Part I
The mother first argues that the trial court erred in denying her request for postminority educational support for Brad on the basis that it was untimely because she filed her petition on Brad's 19th birthday. In order to resolve the issue raised, we must consider the origins of and the nature of postminority educational support under Alabama law.
Section 30-3-1, Ala.Code 1975, provides that "[u]pon granting a divorce, the court may give the custody and education *1054 of the children of the marriage to either [the] father or mother, as may seem right and proper." As interpreted by our supreme court, that statute "contemplates support for the children of divorced parents who, but for the divorce, would have continued to be entitled to the support of their father." Ex parte University of S. Alabama, 541 So.2d 535, 537 (Ala.1989).
In Ex parte Bayliss, 550 So.2d 986 (Ala.1989), the Supreme Court of Alabama considered the issue whether a trial court has jurisdiction to require parents to provide postminority support for college education to children of a marriage terminated by divorce. The court held that because § 30-3-1 does not use the qualifier "minor" to modify "children," trial courts have jurisdiction to assure "that the children of divorced parents, who are minors at the time of the divorce, are given the same right to a college education before and after they reach the age of 19 years that they probably would have had if their parents had not divorced." Ex parte Bayliss, 550 So.2d at 995. In so holding, however, the Bayliss court placed an important fundamental qualification on post-minority-support jurisdiction:
"In a proceeding for dissolution of marriage or a modification of a divorce judgment, a trial court may award sums of money out of the property and income of either or both parents for the post-minority education of a child of that dissolved marriage, when application is made therefore, as in the case at issue, before the child attains the age of majority."
Ex parte Bayliss, 550 So.2d at 987 (emphasis added). Our supreme court has made it clear since its decision in Bayliss that the filing of a petition for postminority support before the child reaches the age of majority is jurisdictional. See Ex parte Barnard, 581 So.2d 489, 491 (Ala.1991) ("Because the mother's application for an award of college expenses was not made before [the child] attained the age of majority, the trial court no longer had jurisdiction to enter support or custody orders regarding [the child]."); accord, Lolley v. Yarborough, 643 So.2d 1009 (Ala.Civ.App. 1994) (acknowledging binding effect of Barnard).
In Massey v. Massey, 597 So.2d 1375 (Ala.Civ.App.1992), this court considered the effect of the jurisdictional time limitation on a postminority-support petition filed on the 19th birthday of the child for whom the support was sought. This court concluded that the petition for postminority support was untimely:
"Section 26-1-1, Ala.Code 1975, provides that a child receives the same legal rights and abilities as an adult `at the arrival at the age of 19 years.' Webster defines `birthday' as `the anniversary of one's birth' and `a year of life.' Webster's Collegiate Dictionary (7th ed.1976). On the 19th anniversary of her birth, a year has passed from the time that the child was 18. The child then arrives at the age of 19 and is an adult for the purposes of § 26-1-1(a).
"Our supreme court has specifically held that a petition for modification under Bayliss may not properly be filed after the child arrives at the age of 19. There is absolutely nothing in Bayliss, or its progeny, to recommend that the time frame be extended. We therefore hold that the petition in this case was untimely filed."
Massey v. Massey, 597 So.2d at 1376.
Brad turned 19 on February 16, 1999, which was the day after a state holiday, i.e., the third Monday in February (see § 1-3-8, Ala.Code 1975). The mother argues that because the last day that Brad was a minor was a holiday, she was entitled, pursuant to § 1-1-4, Ala.Code 1975, *1055 and Rule 6(a), Ala. R. Civ. P., to wait until the next succeeding working day to file her petition. Section 1-1-4 generally excludes holidays from the computation of "time within which any act is provided by law to be done" where the last day for doing the act is a holiday, whereas Rule 6(a) excludes holidays that constitute the last day of "any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute."
We do not agree with the mother's arguments. The Bayliss court, in delineating the right to postminority educational support, specifically noted that "`minority is a status.'" Ex parte Bayliss, 550 So.2d at 991 (quoting Davenport v. Davenport, 356 So.2d 205, 208 (Ala.Civ. App.1978)). In turn, the Barnard court noted that the trial court retains jurisdiction over the children of divorced parents only "during the children's infancy." Ex parte Barnard, 581 So.2d at 490. The principle to be gleaned from these precedents is that the power of a trial court to award postminority educational support is contingent upon, among other things, the filing of a petition during the existence of a particular statusthe infancy of the child for whom support is sought. If the person for whom support is sought becomes an adult, and loses the status of a "child," that status cannot be restored, and the jurisdiction of the trial court cannot be resurrected. Thus, the premajority filing requirement announced in Bayliss, enforced in Barnard, and applied in Massey is not in the form of a specified filing period, but is a status-based limitation on the jurisdiction of trial courts over "children" of divorced parents. We conclude that the trial court correctly determined that the mother's petition was untimely as to its request for postminority educational support for Brad.
The mother next argues that the trial court erred in terminating the father's obligation to pay child support for the parties' younger son, Chad, after September 1999, when Chad began living with the father; the mother argues that the father's support obligation was contractual in nature and that she never consented to a modification of the contract. However, while the parties entered into an agreement before the divorce judgment, under which the mother would be paid child support for Chad until he reached the age of 19, that agreement was subsumed into the original divorce judgment. "`An agreement between the parties fixing child-support payments, when incorporated into a judgment, becomes merged into the judgment and thereby loses its contractual nature to the extent that a court of equity has the power to modify the [judgment] when changed circumstances so justify.'" Ex parte Carstens, 728 So.2d 128, 134 (Ala. 1998) (citation omitted). Thus, the trial court did not err in terminating the father's child-support obligation as to Chad for periods after Chad began living with the father.

Part II
The mother next argues that the trial court erred in "relieving" the father of his child-support obligation for Chad, a minor, because of Chad's "noncompliance" with his parents' wishes. Between March 1999 and September 1999, Chad quit school and worked only sporadically, if at all. The father testified that during that period, Chad spent a number of nights away from the mother's home. However, the record indicates that Chad did not maintain a separate residence and that, although he was frequently absent from his mother's home, he continued to live with her.
In its judgment, the trial court found that Chad had not lived with either parent *1056 between March 1999 and September 1999, and, therefore, it "felt" that neither parent should be required to pay support for him during that period. However, the trial court ordered the father to pay $2,000 in child support for that period. That award for a child-support arrearage contradicts the mother's contention that the trial court erred in failing to award any support with respect to that period. The substance of the mother's argument on this issue is actually that the trial court's deviation in the amount of child support awarded for that period was extreme.
A parent has a duty to support a child during his or her minority; a child reaches the age of majority at 19. Anderson v. Loper, 689 So.2d 118 (Ala.Civ. App.1996). However, a parent has no duty of support once a child is emancipated. Id. This court has stated the standards to be used to determine whether a child is self-supporting, or emancipated:
"Generally, parents owe a legal duty to support minors because children are unable to, and do not, support themselves, requiring many years for developing, education, training and maturing before they can become reasonably self-sufficient. When a minor's situation is such that [she] no longer needs to be supported, then [her] right to support from [her] parents, or either of them, should no longer exist. This is because the amount of child support required to be paid by a parent has always been dependent upon two factors; first, the needs of the child and second, the ability of the parent to pay. When a minor is employed and self-supporting, and may properly be expected to continue to [be employed and self-supporting], [her] parents are relieved from the obligation of support. `Self-support' has its common and ordinary meaning, that is, the independent support of oneself."
Brooks v. Brooks, 386 So.2d 472, 474 (Ala. Civ.App.1980) (citations omitted). The trial court made no finding that Chad was emancipated or self-supporting; the evidence in the record would not appear to support such a finding. See Brooks v. Brooks, supra (minor, although employed, not self-supporting where the minor utilized her parents' contributions to her support).
The trial court awarded the mother $2,000, or an average of $285.71 per month, as child support for the seven months March 1999 through September 1999. Although the trial court stated in its judgment that in reaching its child-support award, it had considered the "credits and offsets" to which the father was entitled, the record does not indicate that the father contributed to the support of Chad during the relevant period. Although this court is unable to say with any certainty to what "credits and offsets" the trial court referred, we note that in his brief on appeal, the father states that the "credit" was for a $1,500 loan he testified he made to the mother so that she could move out of her house. However, a trial court may not allow a credit against a child-support arrearage in order to satisfy a debt allegedly owed by a custodial parent to the noncustodial parent. See Schlick v. Schlick, 678 So.2d 1176 (Ala.Civ.App.1996); Grimes v. Woolman, 595 So.2d 504 (Ala.Civ.App. 1992). A child's right to support from his parent is fundamental, and child support is for the sole benefit of the minor child. State ex rel. Shellhouse v. Bentley, 666 So.2d 517 (Ala.Civ.App.1995). Allowing such a credit against a child-support obligation would, essentially, require the child to repay the custodial parent's debt to the noncustodial, support-paying spouse.
The parties did not submit income affidavits; the record indicates that the parties' combined incomes total approximately *1057 $160,000 annually, or $13,333 per month. It is undisputed that the father's income alone is approximately $12,000 per month, a figure that exceeds the uppermost level of the child-support schedule in the Child Support Guidelines, Rule 32, Ala. R. Jud. Admin. The father's prior child-support obligation had been $1,780.56 per month for both children. At the uppermost income level of the child-support schedule, which is exceeded by the combined incomes of the parties to this action, the parents' total support obligation for one child would be $992 per month. The incomes of the parties in this case remove the child-support determination from the Rule 32 Child Support Guidelines. In such a situation, the establishment of a noncustodial parent's child-support obligation is within the trial court's discretion. O'Neal v. O'Neal, 678 So.2d 161 (Ala.Civ. App.1996) (no abuse of discretion in child-support award made in spite of fact that one party failed to file forms pursuant to Rule 32, Ala. R. Jud. Admin., where the parties' combined incomes exceed the uppermost limits of the Child Support Guidelines).
We conclude the deviation at issue in this case is extreme. It appears that the father argued he should not be liable for child support for a period in which the child did not work and did not attend school; however, the child was still a minor at that time. Although neither parent approved of Chad's lifestyle and choices during the period March 1999 through September 1999, he remained a minor and the parties were obligated for his support. The trial court's judgment awarding the mother an average of only $285.71 per month for Chad's support for March 1999 through September 1999 burdens the mother, whose income is significantly less than the father's, with the vast majority of the cost of Chad's support during those months.

Conclusion
The trial court's denial of the mother's request for postminority support for Brad is affirmed, as is its termination of the father's child-support obligation for Chad after September 1999. The trial court's determination of the father's child-support obligation for Chad for the period March 1999 through September 1999 is reversed. The action is remanded for the trial court to make a determination, consistent with this opinion, of that child-support arrearage.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON and PITTMAN, JJ., concur.
YATES, P.J., and CRAWLEY J., concur as to Part II and dissent as to Part I.
MURDOCK, J., concurs as to Part I and dissents as to Part II.
CRAWLEY, Judge, concurring in part and dissenting in part.
I concur that the trial court abused its discretion by ordering the father to pay $2,000 in child support for Chad for the period between March and September 1999. The trial court specifically found that, during that six-month period, Chad had not lived with either parent. Therefore, while the trial court was authorized to conclude that neither parent incurred any significant day-to-day expense directly attributable to Chad, the mother nevertheless had certain fixed expenses unaffected by Chad's temporary absence.
"Certain fixed expenses are unaffected by [a child's temporary absence from the custodial parent's household]. Total child-related expenditures to age 18 are estimated as follows: 25.1 percent for transportation; 24.1 percent for shelter, *1058 household goods, fuel, and utilities; 7.3 percent for clothing; and 5.7 percent for health care (see T. Espenshade, Investing in Children, at 58 (1984)). Thus 62.2 percent of the total costs to age 18 are primarily fixed. Regardless of where the child sleeps on a given night, the custodial parent continues to pay rent and utilities ... and still makes health insurance, auto loan, and orthodontist payments. A decrease in the amount of child support paid during that time will hinder the custodial parent's ability to meet these fixed costs."
K. Getman, Changing Formulas for Changing Families: Shared Custody Must Not Shortchange Children, 10 Family Advocate at 48-49 (quoted in Flanagan v. Flanagan, 656 So.2d 1228, 1231-32 (Ala. Civ.App.1995)).
I dissent from holding that the mother's petition for postminority support for Brad was untimely. I believe the mother is correct: she was entitled, pursuant to Ala. Code 1975, § 1-1-4, and Rule 6(a), Ala. R. Civ. P., to file her petition for postminority support on the day Brad turned 19, because the day before he turned 19 was a state holiday. I agree that the trial court has jurisdiction over the children of divorced parents only during the minority of those children. I also agree that minority is a "status." I do not agree, however, that allowing the mother an extra day to file her petition amounts to "restoring" a lost status or "resurrecting" a lapsed jurisdiction. Instead, I conclude that allowing the extra day is simply extending, because of an intervening state holiday, the "[t]ime within which any act ... provided by law [including the common law and the caselaw of Bayliss, Barnard, and Massey] [must] be done." Ala.Code 1975, § 1-1-4.
YATES, P.J., concurs.
MURDOCK, Judge, concurring as to Part I and dissenting as to Part II
I agree with Part I of the per curiam opinion; however, I do not agree with the reversal in Part II of the per curiam opinion of the award of $2,000 to the mother with respect to child support for Chad during the period March through September 1999,[1] a period during which Chad neither attended high school nor was employed. As to that issue, I note that the parties' combined monthly income exceeded the upper limit of the Child Support Guidelines (see Rule 32, Ala. R. Jud. Admin.). For that period, then, "the amount of child support to be awarded is discretionary with the trial court," although it should be "reasonably related to the child's needs." O'Neal v. O'Neal, 678 So.2d 161, 165 (Ala.Civ.App.1996). Moreover, I note that, in general, "matters concerning child support, including matters regarding credits, are within the discretion of the trial court." Douglass v. Douglass, 669 So.2d 928, 930 (Ala.Civ.App.1995).
As I understand her brief, the mother contends that the trial court could not "estimate" the child support due for the period March through September 1999. Because of the inapplicability of the Guidelines themselves, the trial court's failure to make explicit findings regarding the evidence it considered in "estimating" the child support due to be awarded does not amount to reversible error. See Derie v. Derie, 689 So.2d 142, 145 (Ala.Civ.App. 1996) (declining to require written findings regarding deviation from the guidelines when Guideline income limits are exceeded).
However, even were I to treat the mother's argument as actually challenging the *1059 amount of child support awarded for Chad for the seven-month period at issue, as the per curiam opinion does, I would not reverse the trial court's child-support award on the sole basis that the amount awarded is an "extreme deviation" from what the Guidelines would have mandated had the parents' incomes been equal to the $10,000 upper monthly income limit of the Guidelines.[2] To the extent that the per curiam opinion implies that the trial court must use the figure at the top end of the Guidelines and add more, I would note that the $992 figure cited in that opinion is the total support obligation as to a single minor child for both parents, not just one of them. Thus, this court has held that a trial court has the discretion under Rule 32(C)(1), Ala. R. Jud. Admin., to award child support that is less than the total obligation amount dictated for the upper income limit. Garrett v. Garrett, 637 So.2d 1376 (Ala.Civ.App.1994) (father directed to pay $900 per month, not $992, although parties' income was off the guidelines scale).
Moreover, the per curiam opinion's statement that the mother was awarded "an average of only $285.71 per month," 816 So.2d 1057. although correct, is somewhat misleading, at least when considering all of the possible "credits and offsets" the trial court allowed. The record reveals that the father paid $1,500 to the mother during 1997 just after the death of one of the parties' other children; there is no evidence that the father was under any duty to make such a gratuitous payment. Moreover, despite the failure of the mother to obtain Bayliss relief, the father testified that he reimbursed the mother for at least $625 of the sums she has expended respecting Brad's college education expenses, sums that he had no legal duty to pay. When those gratuitous payments ($2,125) are added to the $2,000 award, which was expressly calculated after allowing for "all credits and offsets," the net amount of support rises to $4,125, or approximately $589.29 per month (an amount that is more than half of the $992 guideline amount cited in the per curiam opinion).
Although Chad was not shown to be legally emancipated during the period March through September 1999, so as to warrant a total suspension of child-support payments to the mother, the record simply fails to show that Chad's needs exceeded the amount awarded, or even to indicate what expenses the mother incurred as to Chad other than one or two discrete professional bills. I cannot conclude that the mother has demonstrated, as she must, that the trial court's support award is not "reasonably related to [Chad]'s needs." O'Neal, 678 So.2d at 165. Accordingly, I must respectfully dissent from the reversal in part.
NOTES
[1] Rule 32(A)(3)(a), Ala. R. Jud. Admin., permits a trial court to modify child-support installment payments "accruing after the filing of the petition for modification."
[2] I do not believe a trial court can or cannot "deviate" from Guidelines that do not apply in the first place.