Ronald E. Burkett ("the father") and Angela B. Gresham ("the mother") were divorced in 1996. The mother and the father were awarded joint custody of the parties' two children. Pursuant to the terms of the divorce judgment, the parties' children lived with the mother from January to June each year, and they lived with the father from July to December each year. The divorce judgment required the father to pay $170 per month in child support, and the parties were ordered to share equally in the payment of the children's medical expenses not covered by health insurance.
In September 2002, the State of Alabama, on behalf of the mother, filed a petition seeking to increase the father's child-support obligation. The father answered and filed a counterclaim seeking a modification of custody; the father also sought to have the mother held in contempt for her failure to pay her half of certain medical expenses for the parties' children. The trial court conducted a hearing at which it received ore tenus evidence. On May 7, 2003, the trial court entered a judgment in which it, among other things, modified the father's child-support obligation and ordered the father to pay postminority educational support for the parties' oldest child, a daughter. The father filed a postjudgment motion; the trial court denied that motion. The father timely appealed.
The record indicates that in December 2001 the parties' daughter had a disagreement with the father. Since that time, the daughter has resided with the mother. The daughter has had little, if any, contact with the father since December 2001. The parties continued to share physical custody of the son pursuant to the terms of their divorce judgment.
The father testified that although he submitted bills for medical expenses for the children to the mother, she failed or refused to pay her half of those medical expenses. A 1998 judgment ordered the mother to pay amounts for a previous medical-expenses arrearage. The mother testified that, at the time of the April 2003 hearing, she owed the father for accumulated medical expenses for the children that he had paid. The mother explained that when she incurred a medical expense for one of the children, she would "take half of it off what [she owed the father]." The mother admitted that she owed the *Page 507 
father approximately $170 for medical expenses that had apparently accrued since the 1998 enforcement judgment was entered. The mother also admitted that she had not paid in full the amount she had been ordered to pay under the 1998 judgment.
The mother testified that the parties' daughter was an "A-B" student at the time of the hearing and that the daughter wanted to attend a local community college. The mother testified that the cost of tuition, books, and supplies would be approximately $737 per semester at the community college.
The mother presented evidence that she earned $16,141 in 2001 and that a recent raise in her wages had increased her income to $1,408 per month, or approximately $16,900 per year. The father testified that he earned $2,106 per month in gross income, or $25,272 per year. The father admitted that, at the time of the April 2003 hearing, his year-to-date average monthly gross income was $2,292 per month. However, he explained that because he was not paid for three weeks when his employer closed for the Thanksgiving and Christmas holidays, his actual average monthly income was the lower figure of $2,106 per month.
The father has remarried; his current wife has a child from a previous relationship or marriage. The father's wife testified that she earns approximately $42,000 in annual gross income. The father testified that his net income is $1,600 per month and that his wife receives a net income of $2,200 per month. The father testified that his monthly household expenses totaled $4,190, which is slightly more than the combined net monthly incomes of the father and his current wife. The father testified that his financial condition was not good, and his wife testified that she and the father have considered filing for bankruptcy. On cross-examination, however, the father admitted that he and his wife have three vehicles and that they make payments on, and pay insurance for, each of those vehicles. The father also testified that he was willing to help pay for the children's college educations "if they have something to do with me."
The father argues on appeal that the trial court erred in ordering him to pay postminority educational support for the parties' daughter. In Ex parte Bayliss, 550 So.2d 986 (Ala. 1989), our supreme court held that a divorced parent may be required to pay postminority educational support for his or her child where application for that support is made before the child reaches the age of majority.
 "The Supreme Court of Alabama set out certain factors for the trial court to consider when ruling on a petition for postminority support. See Ex parte Bayliss, 550 So.2d 986 (Ala. 1989). Bayliss
clearly specifies those factors that shall, and those that may, be considered by the trial court when it is deciding whether to order support for postminority college education. In an award of postminority educational support for a child of divorced parents, the trial court `"shall consider all relevant factors that shall appear reasonable and necessary, including primarily the financial resources of the parents and the child and the child's commitment to, and aptitude for, the requested education."' A.L. v. B.W., 735 So.2d 1237, 1239 (Ala.Civ.App. 1999); Thompson v. Thompson, 689 So.2d 885, 887
(Ala.Civ.App. 1997) (quoting Ex parte Bayliss, 550 So.2d 986, 987 (Ala. 1989)). The court suggested that trial courts also should consider `the standard of living that the child would have enjoyed if the marriage had not been dissolved and the family unit had been preserved and the child's relationship *Page 508 
with his parents and responsiveness to parental advice and guidance.' Id. at 987. The trial court must also determine if the noncustodial parent has `sufficient estate, earning capacity, or income to provide financial assistance without undue hardship.' Thrasher v. Wilburn, 574 So.2d 839, 841
(Ala.Civ.App. 1990). Undue hardship does not imply the absence of personal sacrifice, because many parents sacrifice to send their children to college. Id."
Penney v. Penney, 785 So.2d 376, 378-79 (Ala.Civ.App. 2000).
The father contends that he cannot afford to contribute to the daughter's college expenses. He also cites the strained relationship with the daughter as an additional factor that indicates that the trial court erred in entering the postminority-support provision of the May 7, 2003, judgment. SeeStinson v. Stinson, 729 So.2d 864 (Ala.Civ.App. 1998) (holding that although a strained relationship between a parent and a child does not preclude the parent from having a postminority-support obligation, it is a factor for the trial court to consider).
The father cites A.L. v. B.W., 735 So.2d 1237 (Ala.Civ.App. 1999), in support of his argument that he is financially unable to contribute to the daughter's college-education expenses. InA.L. v. B.W., supra, this court reversed a judgment requiring a father to pay postminority educational support for his daughter. In so holding, this court noted that the father's undisputed monthly expenses exceeded his income and that he was dependent on his new wife's income in order to meet his monthly household expenses. This court concluded that the father did not have "sufficient income or a sufficient estate to provide post-minority assistance to the daughter without undue hardship to himself." A.L. v. B.W., 735 So.2d at 1239.
In this case, the father presented evidence that his monthly expenses exceed his and his wife's combined monthly income. However, the father was cross-examined regarding the necessity of his paying for indebtedness on and insurance for a third vehicle. Thus, it appears that at least some of the father's monthly expenses can be argued to be nonessential. Further, the father testified that he would be willing to contribute to the children's college educations if they maintained contact with him. The mother presented evidence that the cost of the daughter's requested education was approximately $737 per semester, and the trial court ordered the father to pay one-half of that amount. Therefore, although this court might not have reached the same result as did the trial court in this case, we cannot say that the trial court erred in ordering the father to pay one-half of the daughter's postminority educational expenses.
The father also argues that the trial court "erred in granting relief" to the mother because, he contends, she did not have "clean hands" when she petitioned the trial court for that relief. In his brief on appeal, the father does not specifically identify the form of relief to which he objects. However, in its May 7, 2003, judgment, the trial court ordered the father to pay postminority educational support and it increased the father's child-support obligation. Given the father's previous, specific argument protesting the award of postminority support (discussed above), we must assume, as has the State in its brief filed on behalf of the mother,[1] *Page 509 
that the father objects to the increase in his monthly child-support obligation.
"The purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when the party's own wrongful conduct renders the assertion of such legal rights `contrary to equity and good conscience.'" J M BailBonding Co. v. Hayes, 748 So.2d 198, 199 (Ala. 1999) (quotingDraughon v. General Fin. Credit Corp., 362 So.2d 880, 884 (Ala. 1978)). It is well settled that the decision whether to apply the clean-hands doctrine is within the sound discretion of the trial court. Borcicky v. Borcicky, 763 So.2d 265 (Ala.Civ.App. 2000);Grant v. Smith, 661 So.2d 752 (Ala.Civ.App. 1994). See alsoFitzhugh v. Fitzhugh, 634 So.2d 565 (Ala.Civ.App. 1994) (trial court's failure to apply the clean-hands doctrine was not an abuse of discretion in a custody-modification case); Holman v.Holman, 612 So.2d 492 (Ala.Civ.App. 1992) (affirming the trial court's decision to allow a husband who was under a contempt finding for his failure to pay child support to bring an action seeking to have the wife held in contempt related to the enforcement of a property-division provision of the parties' divorce judgment).
The clean-hands doctrine may be applied in actions involving the modification of child support. Borcicky v. Borcicky, supra. However, in those cases involving the application of the clean-hands doctrine to a child-support issue, the courts applied the doctrine in refusing to decrease a child-support obligation. See Borcicky v. Borcicky, 763 So.2d at 267 (affirming the denial of the father's petition to reduce his child-support obligation where the evidence supported a finding that the father had "consistently and willfully disobeyed" previous orders of the trial court); Grant v. Smith, supra (affirming the application of the clean-hands doctrine to deny a petition to reduce a child-support obligation); Hilson v.Hilson, 598 So.2d 955 (Ala.Civ.App. 1992) (affirming the trial court's denial, on the basis of the clean-hands doctrine, of the father's petition to reduce his child-support obligation). In this case, however, the father would have the courts apply the clean-hands doctrine to bar the increase in the amount of monthly child support that he is obligated to pay. The father has cited no authority supporting the application of the clean-hands doctrine to prevent an increase in a noncustodial parent's child-support obligation.
It is well settled that minor children have a fundamental right to support from their parents and that child support is for the benefit of the children and not for the benefit of the custodial parent. Abel v. Abel, 824 So.2d 767 (Ala.Civ.App. 2001); Floydv. Abercrombie, 816 So.2d 1051 (Ala.Civ.App. 2001); Foster v.Foster, 733 So.2d 454 (Ala.Civ.App. 1999); State ex rel.Shellhouse v. Bentley, 666 So.2d 517 (Ala.Civ.App. 1995). To apply the clean-hands doctrine in the manner advocated by the father, i.e., to prevent the increase of his child-support obligation on the basis of the mother's allegedly unclean hands, would allow the conduct of a parent to interfere with a minor child's fundamental right of support. The child, rather than the custodial parent, would be punished in such a situation. Therefore, we conclude that the trial court did not err in refusing to apply the clean-hands doctrine to bar the mother's claim for an increase in the father's child-support obligation.
In addition, given the facts of this case, we cannot say that the trial court erred in reaching that portion of its judgment pertaining *Page 510 
to child support. In this case, the mother sought an increase in the father's child-support obligation at a time in which she admitted that she had not properly contributed her portion of the cost of certain medical expenses the father had paid for the children. However, the father's previous child-support obligation had been premised on his having both children during one-half of the calendar year. In the two and one-half years before the April 2003 modification judgment, the mother had had full-time custody of the parties' daughter (because of the daughter's choosing to live with the mother), in addition to having the parties' son in her custody for six months each year. Also, we note that the State, on behalf of the mother, instituted this support action and that the mother had not filed the action on her own. Further, in its judgment, the trial court ordered the mother to pay the accumulated medical-expenses arrearage within 45 days of that judgment. Therefore, in its May 7, 2003, judgment, the trial court addressed the mother's failure to meet all of her obligations established by the parties' divorce judgment and the later 1998 enforcement judgment. Given the totality of the circumstances of this case, we cannot agree with the father that the trial court erred in failing to apply the clean-hands doctrine to deny the mother relief in this instance.
AFFIRMED.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
[1] In its brief filed on behalf of the mother, the State has addressed only the argument made by the father that the mother had unclean hands and should not have been entitled to relief. The State took no position regarding the trial court's imposition on the father of he postminority-support obligation.