THOMAS, Judge.
Jerry Todd Shivers ("the former husband") and Paula Kimberly Shivers ("the former wife") were divorced by a 2010 judgment of the Shelby Circuit Court ("the *196 trial court"). The parties have three children, whose physical custody was awarded to the former wife. The 2010 divorce judgment incorporated an agreement of the parties, which contains the following provisions pertinent to this appeal:
"CHILD CUSTODY, VISITATION & SUPPORT:
"....
"p. ['The extracurricular-expense provision']: ... [The former husband] and [the former wife] agree to make decisions regarding school activities and functions together and split the cost of all school expense and field trips (i.e., Six Flags trips, etc.) for the children. They also agree to split the ordinary and usual cost for extra activities (i.e., school and local softball and children's activities).
"....
"s. Children's First Automobile: After each child turns 16 years of age, [the former husband] will be responsible for 1/2 the cost of a reliable automobile for their use, including 1/2 insurance costs and maintenance.
"....
"REAL ESTATE:
"Marital Residence. The parties jointly own the marital residence and lot ... and [the former wife] and children shall reside in said marital residence until the home is sold. All rights of physical possession will be awarded to [the former wife] to maintain a continuity of life for the children. [The former wife] will have exclusive physical rights to the property until it is sold, with [the former husband] allowed to enter the homestead only with written permission from [the former wife] stating date, time, duration, and purpose. During this time, and until the home is sold, the home will remain titled to [the former husband] and [the former wife] as joint tenants with rights of survivorship. ... [The former wife] will have the option of living in the home for thirty months prior to placing the home on the market with the following conditions requiring the sale of the property prior to this time period.
"a. [The former husband] marries another individual and gives [the former wife] a 6 month notice in writing that the home will need to be sold to eliminate his financial ties to [the former wife]. [The former wife] will have the option to refinance and purchase 1/2 the equity from [the former husband] or [the former husband] may refinance and purchase the equity from [the former wife] based on the current market value and based on a contractual offer made by an unrelated third party, if an equitable dollar amount can not be agreed upon by [the former husband] and [the former wife].
"....
"c. If [the former wife] should remarry, she and her new husband will have 4 months to pay [the former husband] for his 1/2 equity within [the] 30 month period, should any exist, or the home must be put on the market for sale. [The former wife] will have the option to refinance and purchase 1/2 the equity from [the former husband] or [the former husband] may refinance and purchase the equity from [the former wife] based on current market value and based on a contractual offer made by an unrelated third party, if an equitable dollar amount can not be agreed upon by [the former husband] and [the former wife].
"[The former wife] shall choose three realtors when the sale of the home is eminent [ (sic) ] and [the former husband] will choose the final realtor from *197 these three options. ... Upon the closing of a sale of the residence, the net proceeds from the sale, after satisfaction of the mortgage indebtedness, real estate commissions, and normal and routine closing costs, shall be divided as stated herein below. All costs or expenses paid by [the former husband] or [the former wife] for repairs or maintenance needed to sell the home or repairs needed for [the former wife] and children to remain in the home, i.e., air conditioner, heating system, and the like, will be reimbursed to [the former husband] or [the former wife] out of the equity proceeds, upon the sale of the home, and the remaining divided as stated below.
"... All major repairs in the marital residence such as heating and air conditioning system, septic system, or plumbing system, or repairs suggested by the realtor for the sale, i.e, repainting and the like, shall by paid by [the former husband] and [the former wife] equally of if by one person that person repaid before the division of the equity. Additionally, should [the former husband] be behind in his payments to [the former wife] for child support and the like than these shall be deducted as well.
"... [The former husband] and [the former wife] shall not in any way attempt to hinder, destroy, or decrease the value of the home in any way. When the home is for sale, [the former wife] shall keep the home in showable condition. [The former husband] shall keep the yard maintained and in showable condition or pay someone who will do so.
"... [The former wife] will advise [the former husband] of any repairs or pending issues with the home until the home is sold. ..."
In March 2016, the former husband filed in the trial court a complaint, seeking to have the former wife held in contempt for various alleged violations of certain provisions of the 2010 divorce judgment, including the former wife's failure to have the former marital residence listed for sale within the time provided in the 2010 divorce judgment, and seeking a modification of his child-support obligation because the parties' eldest child had reached the age of majority; the former husband's action was assigned case number DR-10-900208.03 ("the former husband's action"). The former wife answered the former husband's complaint. The trial court entered a pendente lite order reducing the former husband's child-support obligation by agreement of the parties.
In July 2016, the former husband moved the trial court to order an immediate sale of the former marital residence. The former wife opposed the former husband's motion, arguing that the former husband had failed to assist with maintenance and repairs so that the former marital residence could be placed on the market. The former wife later filed a separate complaint in which she sought to have the former husband held in contempt for failing to pay certain amounts she claimed were due to her under the 2010 divorce judgment and sought an order awarding her the parties' former marital residence; the former wife's action was assigned case number DR-10-900208.05 ("the former wife's action").[1]
*198 After a trial held on May 1 and 2, 2017, the trial court entered a judgment in both the former husband's action and the former wife's action in which it determined that a sale of the former marital residence would produce no equity and might cost the parties additional funds, awarded the former wife a judgment of $12,342 for certain moneys the former wife claimed were due her under the 2010 divorce judgment, recalculated the former husband's child-support obligation, and deleted the provisions of the 2010 divorce judgment regarding the former marital residence and awarded the former wife the right and title to the former marital residence.[2] The former husband filed a postjudgment motion, to which the former wife filed a response. The former husband's motion was denied by operation of law, see Rule 59.1, Ala. R. Civ. P. (providing that a postjudgment motion is deemed denied on the 90th day after its filing), after which the former husband filed a timely notice of appeal as to each action.
" ' " ' "[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust." ' " Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala. 2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala. 2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala. 2002) ). " 'The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.' " Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala. 2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala. 1985) ). "Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge's conclusions of law or the incorrect application of law to the facts." Waltman v. Rowell, 913 So.2d at 1086.' "
Yarbrough v. Yarbrough, 184 So.3d 1045, 1050 (Ala. Civ. App. 2015) (quoting Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala. 2007) ).
At trial, the former husband testified that the 2010 divorce judgment had required that the former marital residence be placed for sale 30 months after the entry of the 2010 divorce judgment, or in April 2013, but, he complained, the former wife had not yet placed the former marital residence on the market. According to the former husband, the value of the former marital residence is between $400,000 and $450,000. He explained that the mortgage indebtedness on the former marital residence was $245,000 and that the parties had had a $63,000 home-equity line of credit secured by the former marital residence; the former husband said that the former wife had not paid the home-equity line of credit and that it had been "charged off" and was a lien against the former marital residence. The former husband admitted that he had filed for bankruptcy in December 2014 and that he was no longer a responsible party on either the mortgage or the home-equity line of credit.
The former husband admitted that he had not paid for repairs suggested by the realtor or for basic upkeep or general maintenance of the former marital residence, like lawn maintenance, exterior pressure washing, and painting, but he *199 said that the former wife had contacted the sheriff's office when he had tried to come onto the property to perform repairs. He insisted that he should not have to pay for any repairs or maintenance costs relating to the former marital residence incurred after April 2013, because, he said, the former wife had hindered the sale of the former marital residence because she desired to continue residing there until the parties' youngest child graduated from high school. The former husband proposed that the former wife be ordered to leave the former marital residence in 30 days, that he be allowed to live in the former marital residence and perform repairs, and that he be permitted to place the former marital residence for sale by owner instead of by utilizing the services of a realtor.
The former husband testified that, pursuant to his understanding of the 2010 divorce judgment, he was not required to pay for half the cost of a child's extracurricular activity unless he had agreed for the child to participate in the particular activity. The former husband said that he had paid for the children to participate in softball but that he had not agreed for any of the children to participate in cheerleading, show choir, or band. According to the former husband, he cannot afford to pay for expensive activities. The former husband admitted that he owed the former wife half of the cost of noncovered medical expenses for the children, and he also admitted that he had not paid for half of the cost of an automobile for the middle child.
The former wife testified that, in compliance with the 2010 divorce judgment, she had consulted a realtor in 2013 and was informed of several repairs that should be made before placing the former marital residence on the market for sale. However, she said, the former husband had not cooperated with her to make the necessary repairs, and she could not afford to undertake them on her own, so the repairs were not performed and she never listed the former marital residence for sale. The former wife testified that she had recently had an appraisal of the former marital residence performed and that it indicated that the former marital residence was valued at $320,000. Based on the appraised value of the former marital residence, the $244,742 mortgage balance, and the $61,000[3] lien resulting from the former home-equity line of credit, the former wife said, a sale of the former marital residence, after deducting the costs of the sale and the realtor commission, would not yield the parties any equity to divide. Based on this evidence, the former wife requested that the trial court use its equity power to award her the former marital residence.
The former wife testified and presented documentary evidence regarding the noncovered medical expenses incurred by the children and the costs associated with their extracurricular activities. She also testified that she had spent $8,000 on an automobile for the middle child. Although the former wife admitted that she understood that the former husband had not agreed to certain of the children's activities, the former wife said that she believed that he was required to pay half the cost of all the children's activities. In addition to her testimony regarding the parties' lack of effective communication, the former wife presented text messages between the parties demonstrating the former husband's insistence that she move out of the former marital residence, his refusal to assist with the cost of repairs to the former marital residence, his threats to have his employer cancel the eldest child's scholarship, and repeated harassing *200 messages regarding the litigation between the parties.
On appeal, the former husband raises five arguments for reversal. He first argues that the trial court lacked jurisdiction to modify the division of property in the 2010 divorce judgment by awarding the former wife the former marital residence. In addition, the former husband contends that the trial court erred by requiring him to be partly responsible for the maintenance costs related to the former marital residence incurred by the former wife after the date upon which the former marital residence was to be listed for sale. The former husband also challenges the trial court's computation of child support because, he says, the trial court used an incorrect figure for the cost of health insurance for the children. Finally, the former husband contests the trial court's judgment insofar as it awards the former wife reimbursement for half of the costs of the children's extracurricular activities because, he contends, he did not agree to the children's participation in certain of those activities and for half the cost of an automobile for the parties' middle child because, he contends, the former wife did not present sufficient evidence to prove the cost of the automobile.
We first address the former husband's argument that the trial court erred by modifying the property-division provisions of the 2010 divorce judgment. Indeed, as the former husband argues, generally, unless a postjudgment motion has been filed, a trial court may not modify a property division more than 30 days after the entry of a divorce judgment. See Hallman v. Hallman, 802 So.2d 1095, 1098 (Ala. Civ. App. 2001). The former wife contends, however, that a trial court can modify a provision like the one in the present case based on
"the principle of the law that when an original divorce decree deals with property owned by either of the parties to the divorce, and the decree is entered to protect the best interest of the couple's minor children, the trial court retains the power to modify the decree for the benefit of the children."
Ex parte Davis, 495 So.2d 672, 674 (Ala. 1986) (citing Tucker v. Tucker, 280 Ala. 608, 196 So.2d 724 (1967), and Clark v. McGuff, 426 So.2d 453 (Ala. Civ. App. 1983) ). Although the former wife correctly states the exception to the rule against modifying a property division, we cannot agree that the provision in the parties' 2010 divorce judgment is one designed to protect the interests of the parties' children.
The former wife specifically relies on Clark to support her contention that the trial court's modification of the parties' 2010 divorce judgment was a permissible exercise of its discretion. The divorce judgment in Clark had " 'awarded the [mother] possession of the parties' home until such time as the parties' youngest child is over the age of nineteen (19) years, at which time either of the parties will have the right to have said home sold at which time the equity in said home will be divided equally between the parties.' " Clark, 426 So.2d at 454. After the trial court entered a modification judgment in January 1981 ordering the sale of the parties' home, the mother sought relief under Rule 60(b), Ala. R. Civ. P.; the father filed another modification petition in which he requested that the trial court again order the sale of the parties' home, and the mother counterclaimed, arguing that the January 1981 judgment had been obtained by fraud and seeking continued possession of the parties' home and an increase in alimony and child support. Id. The trial court entered a judgment awarding the mother the parties'
*201 home and increased the father's child-support obligation. Id. at 454-55.
Relying on Tucker, the Clark court upheld the modification of the parties' divorce judgment to award the mother the parties' home. Id. at 456. According to the court, the divorce judgment in Clark "was issued to insure that the Clarks' minor children were to be provided with a home," id., and it could therefore be modified for the benefit of the children because " 'when a divorce decree embraces the subject of infant's maintenance or custody, the chancery court, without reservation of power, may on change of circumstances at any time thereafter modify its decree to meet changed conditions.' " Id. at 455-46 (quoting Tucker, 280 Ala. at 611, 196 So.2d at 726 ).
Although cases like Tucker and Clark have allowed the modification of a provision tying the possession and sale of a marital residence to the reaching of the age of majority by the parties' children, the provision contained in the 2010 divorce judgment at issue in the present case, which mentions "continuity of life for the children," does not tie the former wife's possession of the former marital residence to the age of majority of any of the children. Instead, the 2010 divorce judgment required the sale of the former marital residence within 30 months of the entry of the judgment, or sooner, if either party remarried within 30 months of the divorce. Thus, this case is far more like Rayborn v. Rayborn, 409 So.2d 865, 866 (Ala. Civ. App. 1982), in which this court determined that a provision in the Rayborns' divorce judgment providing that Mrs. Rayborn would have the right to possession of the former marital residence of the parties until she remarried or until the parties' minor child reached the age of majority was a property settlement and was not modifiable.
In Rayborn, this court explained that the "double contingency, [Mrs. Rayborn's] remarriage or the child's majority, indicates that the provision was not intended merely to provide additional support for the child, but was a means by which to afford [Mrs. Rayborn] her share of the parties' marital property." Rayborn, 409 So.2d at 866. Like the provision at issue in Rayborn, the provision in the 2010 divorce judgment provides contingencies unrelated to the age of majority or best interest of the children that either require the sale of the former marital residence or a buyout of one party's equity by the other party -- the remarriage of either party or the expiration of the 30-month period. This conclusion is bolstered by the statement in the 2010 divorce judgment indicating that, upon the remarriage of the former husband, he could elect to "eliminate his financial ties to [the former wife]" by demanding the sale of the former marital residence or a buyout by one of the party's of the other's equity.
Thus, we conclude that the provision relating to the former marital residence was a property settlement intended to "afford the [former] wife her share of the parties' marital property." Id. at 866. The trial court therefore lacked the authority to modify the 2010 divorce judgment to award the former marital residence to the former wife, and we reverse that portion of the trial court's judgment deleting the provisions relating to real estate in the 2010 divorce judgment and awarding the former wife the former marital residence. We note that the trial court retains jurisdiction to enter "any future orders or judgments ... as might be prudent in order to enforce, implement, or finally dispose of the entire case by effecting a sale of the [former marital residence]." Boyd v. Boyd, 447 So.2d 790, 793 (Ala. Civ. App 1984) ; see also *202 Flier v. Flier, 502 So.2d 698 (Ala. 1987) (explaining that, although it may not modify or alter the division of the proceeds from a sale of a former marital residence, a trial court retains jurisdiction to enforce a judgment requiring that sale, even if it alters the method of sale).
We reach a different result on the former husband's argument that the trial court erred by ordering him to reimburse the former wife for half the expenses for maintenance and repairs performed on the former marital residence after the date upon which it was required to be placed for sale. According to the former husband, the trial court erred by ordering him to reimburse the former wife for half the maintenance and repair costs incurred after April 2013 for two reasons: because, he says, it is inequitable to require him to bear the cost of maintenance after the date upon which the former marital residence was to be sold and because, he says, the 2010 divorce judgment provides that, if maintenance costs are borne by only one of the parties, that party may recover for half those expenses upon the sale of the former marital residence. The former husband, however, does not provide any authority supporting his argument. See White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala. 2008) ("Rule 28(a)(10)[, Ala. R. App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party's position. If they do not, the arguments are waived." (emphasis added) ); Sea Calm Shipping Co., S.A. v. Cooks, 565 So.2d 212, 216 (Ala. 1990) ("Where an appellant fails to cite any authority for an argument, this Court may affirm the judgment on those issues, for it is neither this Court's duty nor its function to perform all the legal research for an appellant."). We have applied this rule when an appellant has failed to cite authority for a particular issue despite the "plethora of Alabama cases" on that issue. Smith v. Smith, 196 So.3d 1191, 1198 (Ala. Civ. App. 2015). To his peril, the former husband has not cited even basic authority indicating how this court should construe language contained in an agreement incorporated into a divorce judgment, despite the existence of such authority. Thus, on this basis alone, we could affirm the trial court's judgment insofar as it ordered the former husband to reimburse the former wife for half the expenses relating to the maintenance or repair of the former marital residence.
However, we note that the 2010 divorce judgment clearly anticipated that expensive and regular maintenance may be required to ready the former marital residence for sale and to keep it in working order pending that sale. The 2010 divorce judgment provides that "[a]ll major repairs in the marital residence such as heating and air conditioning system, septic system, or plumbing system, or repairs suggested by the realtor for the sale, i.e, repainting and the like, shall by paid by [the former husband] and [the former wife] equally." In addition, the former husband was specifically tasked with "keep[ing] the yard maintained and in showable condition." Finally, the former wife was required to "advise [the former husband] of any repairs or pending issues with the home until the home is sold" (emphasis added), indicating that the former husband's duty to pay half the costs of repairs and maintenance did not terminate on the date the former marital residence was placed on the market for sale.
Based on the testimony and other evidence presented at trial, the trial court concluded that "it was undisputed" that the parties were unlikely to realize a profit on the sale of the former marital residence. Relying on testimony and documentary evidence, the trial court also found that the former husband had not paid for *203 his portion of expenses for which he was made responsible under the 2010 divorce judgment, i.e., the maintenance or repair expenses incurred by the former wife, his half of the children's noncovered medical expenses, his half of the children's expenses for extracurricular activities, and his half of the cost of the middle child's automobile and insurance. Although it did not so specifically state, the trial court likely considered the former husband's recalcitrant conduct in determining that he should be required to reimburse the former wife for his half of the maintenance and repair costs.
"The equitable principle of 'clean hands' or that 'he who seeks equity must do equity' is still appropriately viable" and may be applied by a trial court in a postdivorce action. Hilson v. Hilson, 598 So.2d 955, 956 (Ala. Civ. App. 1992).
" 'The purpose of the clean hands doctrine is to prevent a party from asserting his, her, or its rights under the law when the party's own wrongful conduct renders the assertion of such legal rights "contrary to equity and good conscience.' " J & M Bail Bonding Co. v. Hayes, 748 So.2d 198, 199 (Ala. 1999) (quoting Draughon v. General Fin. Credit Corp., 362 So.2d 880, 884 (Ala. 1978) ). It is well settled that the decision whether to apply the clean-hands doctrine is within the sound discretion of the trial court. Borcicky v. Borcicky, 763 So.2d 265 (Ala. Civ. App. 2000) ; Grant v. Smith, 661 So.2d 752 (Ala. Civ. App. 1994)."
Burkett v. Gresham, 888 So.2d 505, 509 (Ala. Civ. App. 2004). The former husband's refusal to pay certain expenses and "the parties' ... inability to communicate with regards to any matters related to the [former] marital residence and the children" could have led the trial court to conclude that the former husband's conduct should not be rewarded by delaying his reimbursement of the maintenance and repairs costs incurred by the former wife, especially because the trial court concluded that the sale of the former marital residence would not yield any equity for the parties to divide. Accordingly, we affirm the judgment of the trial court insofar as it required the former husband to reimburse the former wife for half the maintenance and repair expenses.
The former husband next argues that the trial court erred in its calculation of his child-support obligation. He complains that the trial court used the incorrect figure for the health-insurance costs incurred by the former wife for the children's coverage. Rule 32(b)(7)(e), Ala. R. Jud. Admin., explains how the parties are to determine the amount of health-insurance costs attributable to the children; it reads:
"(e) The amount to be added to the 'basic child-support obligation' and inserted in Line 6 ('Health-Insurance Costs') of the Child-Support Guidelines form (Form CS-42) shall be the pro rata portion of the medical-insurance premium attributable to the child or children who are the subject of the support order, which shall be calculated by dividing the total medical-insurance premium actually paid by, or on behalf of, the parent ordered to provide the coverage by the total number of persons (adult and/or children) covered and then multiplying the result by the number of children who are the subject of the support order."
The former wife's child-support-obligation income statement/affidavit form ("CS-41 form") indicates that the former wife pays $791 per month for health insurance for herself and the children. Thus, on her CS-41 form the former wife calculated the amount spent on health insurance to *204 be entered onto the child-support-guidelines worksheet ("CS-42 form") as $396 ( ($791/4) x 2 (representing the two minor children) ). The former wife noted on her CS-41 form that her individual insurance premium, if she had not paid for a family plan, would be $181 per month, so, she indicated, the true cost of the insurance for the children was $610 per month. The trial court used the $610 figure when it calculated the former husband's child-support obligation to be $1,083 per month.
The former husband raised this issue in his postjudgment motion, and the former wife conceded that the application of the guidelines would result in a $970-per-month child-support obligation for the former husband. On appeal, the former wife contends that the trial court's calculation could be based on a deviation from the child-support guidelines, as is permitted by Rule 32(A)(ii), Ala. R. Jud. Admin.; however, the trial court makes no mention of a deviation from the guidelines and states no basis for such a deviation in writing, as is required by Rule 32(A)(ii). Thus, we agree with the former husband that the trial court erred in calculating his child-support obligation by using an incorrect figure for the health-insurance costs for the children incurred by the former wife. We therefore reverse the trial court's judgment insofar as it ordered the former husband to pay $1,083 per month in child support and instruct that court to properly calculate the former husband's child-support obligation using $396 as the cost of health-insurance for the children.
We turn now to the former husband's arguments that the trial court erred by ordering him to reimburse the former wife for half the children's extracurricular expenses and by requiring him to reimburse the former wife for half the cost of the middle child's automobile. Regarding the automobile, the former husband argues solely that the former wife failed to present sufficient evidence to support the determination that she paid $8,000 for that automobile. Citing only Ala. Code 1975, § 12-21-12, otherwise known as the "substantial evidence rule," and reiterating the ore tenus standard, neither of which support his argument, the former husband contends that the former wife's testimony that she paid $8,000 for the automobile is insufficient to support the trial court's judgment without supporting documentation. Of course, "[i]t is the law in Alabama that testimony about payment of money is competent, and the fact that there may be written records goes to the probative value of such testimony, not its competency." Johnson v. Langley, 495 So.2d 1061, 1065 (Ala. 1986). The trial court was free to accept the former wife's testimony about the cost of the automobile, particularly in light of the former husband's failure to object to or challenge it at trial. See Flomer v. Farthing, 64 So.3d 36, 45 (Ala. Civ. App. 2010) (concluding that a trial court "was free to accept the daughter's testimony about her average book expenses" despite the father's argument that she failed to "provide sufficient proof of those expenses" when the father failed to challenge the daughter's testimony). We therefore reject the former husband's argument that the trial court erred in requiring him to reimburse the former wife for half the stated cost of the middle child's automobile.
The former husband's argument relating to the extracurricular expenses of the children fares no better. The former husband's main argument for reversal of the judgment insofar as it ordered him to pay half the children's extracurricular expenses is that the language of the extracurricular-expense provision contained in the 2010 divorce judgment required him to pay half the expenses associated with only *205 those school-related activities in which he had agreed for the children to participate. Like his argument regarding the reimbursement of the maintenance and repair expenses related to the former marital residence, the former husband's argument regarding the language of the extracurricular-expense provision is not supported by any authority relating to the construction of settlement agreements incorporated into divorce judgments. See White Sands Grp., 998 So.2d at 1058.
The former husband contends that the language of the extracurricular-expense provision makes a distinction between "extra" activities not offered through the school and school-related activities; he specifically argues that he is not required to pay for school-related activities in which he had not agreed for the children to participate. The language of the 2010 divorce judgment requires the parties to "make decisions regarding school activities and functions together" and requires the former husband to pay half the cost of "all school expense and field trips" and, in a separate sentence, to pay half of the cost of "extra activities," which, the provision indicates, include "school and local softball and children's activities." Without the aid of legal authority and a discussion of that authority supporting what the former husband contends is the proper interpretation of the provision relating to the expenses for the children's extracurricular activities, we cannot discern whether the trial court, which "ha[d] the inherent power to interpret, implement, or enforce its own judgment," Hallman, 802 So.2d at 1098, erred in concluding that the former husband was responsible for half the expenses associated with the children's extracurricular activities regardless of whether he agreed to the children's participation in those activities.[4] The judgment of the trial court, insofar as it ordered the former husband to reimburse the former wife for half the expenses related to the children's extracurricular activities, is therefore affirmed.
In conclusion, we affirm the trial court's judgment insofar as it ordered the former husband to reimburse the former wife for half the costs of maintenance and repair of the former marital residence, half the cost of the children's extracurricular activities, and half the cost of the middle child's automobile. We reverse the trial court's judgment insofar as it modified the parties' 2010 divorce judgment to award the former wife the former marital residence. We also reverse the trial court's judgment insofar as it improperly calculated the former husband's child-support obligation, and we remand the cause for the trial court to properly calculate that obligation in accordance with this opinion or, if it determines that a deviation from the child-support guidelines is warranted, to state its reasons for such deviation as required by Rule 32(A)(ii).
2170228 - REVERSED AND REMANDED WITH INSTRUCTIONS.
*206 2170229 - AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Thompson, P.J., and Pittman, Moore, and Donaldson, JJ., concur.

The record reflects that the Department of Human Resources ("DHR") filed a complaint seeking a modification of the former husband's child-support obligation as well, which action was assigned case number DR-10-900208.04. That action was consolidated with the former husband's action, and, by order of the trial court, DHR's action was ultimately dismissed.

The record does not clearly reflect whether the trial court consolidated the former husband's action with the former wife's action; however, at the commencement of the trial, the trial court, after a question from the former husband's counsel, indicated that it had set both actions for trial.

We note that the testimony concerning the amount of the lien varied between the parties. That discrepancy is not relevant to the analysis in this opinion.

We further note that
"an ambiguity exists if the judgment is susceptible to more than one meaning. Vainrib v. Downey, 565 So.2d 647 (Ala. Civ. App. 1990). Further, if a provision in a divorce judgment is unambiguous, it is within the trial court's discretion to interpret the meaning of the provision, and that interpretation is accorded a presumption of correctness on appeal. Vainrib v. Downey, supra."
Hallman, 802 So.2d at 1098. The parties disagreed on whether the extracurricular-expense provision required the former husband's consent to the children's participation in their school-sponsored extracurricular activities, and, thus, the trial court could have concluded that the provision in question was ambiguous and, accordingly, exercised its discretion in interpreting its intended meaning. The former husband does not address that possibility in his brief on appeal.