This case involves the denial of a petition for the writ of habeas corpus.
On January 31, 2001, the State, on behalf of D.C., filed a complaint seeking to establish paternity and seeking child support, alleging that G.W. was the father of K.N.C., who was born in 2000. Genetic testing indicated a 99% probability that G.W. is the father of K.N.C. A hearing was *Page 808 
held on October 24, 2001. The trial court found G.W. in contempt and ordered him jailed for "out of order and insolent" comments made during the proceeding. G.W. was released from jail on October 25, 2001. On October 27, 2001, the trial court entered a judgment, finding G.W. to be the father of K.N.C. The trial court imputed income to G.W. of $893 per month and ordered him to pay $173 per month in child support. The trial court also ordered that G.W. reimburse D.C. for retroactive child support in the amount of $1,557, at the rate of $25 per month. The trial court ordered G.W. to pay $20 within 30 days of the entry of the judgment to pay for the cost of a new birth certificate, and it ordered that the parties share noncovered medical expenses of the child.
On February 19, 2002, D.C. petitioned for a rule nisi, alleging that G.W. owed $692 as a child-support arrearage and $10.38 in interest as of February 14, 2002. On March 22, 2002, G.W. was served with notice of the petition and was granted a 30-day continuance to obtain legal counsel. On April 25, 2002, a hearing was held on the petition. G.W. left the court before the case was called. On April 29, 2002, the trial court held G.W. in contempt, finding that he owed $2,549.72 as a child-support arrearage. The court issued a writ of attachment and set a cash bond in the amount of $2,550 in order for G.W. to purge himself of the contempt. G.W. did not appeal from that contempt order.
The trial court held subsequent hearings on July 25, 2002, September 27, 2002, December 10, 2002, January 30, 2003, and April 1, 2003; G.W. failed to appear at any of those hearings.[1] On April 17, 2003, G.W. was arrested. On May 28, 2003, the trial court found that G.W. owed $5,168.09 as a child-support arrearage. The trial court reset a cash bond and reduced it to $2,000.
On June 23, 2003, G.W. filed a petition for the writ of habeas corpus, alleging an inability to pay child support. On June 26, 2003, a hearing was held on G.W.'s petition. That same day, the trial court denied the petition. G.W. appeals, arguing that because he is unable to satisfy his court-ordered child-support obligations, it is error to incarcerate him for civil contempt; therefore, he argues, his petition should have been granted. We note that G.W. did not appeal from the April 29, 2002, judgment of contempt; therefore, we do not reach the correctness of that judgment on this appeal.[2] The sole issue before this court is whether the trial court erred in denying G.W.'s petition for the writ of habeas corpus. "Although one may be guilty of contempt, . . . imprisonment, as a means of coercing payment, may not be imposed if there is shown a present inability to pay." Exparte Talbert, 419 So.2d 240, 241 (Ala.Civ.App. 1982). "`Imprisonment for contempt should never be imposed by a judge where failure to pay [court-ordered support] is not from contumacy, but from inability to comply *Page 809 
with the order.'" Taylor v. Johnson, 764 So.2d 1281, 1282
(Ala.Civ.App. 2000), quoting Ex parte Talbert, 419 So.2d at 241.
A review of the record reveals the following: G.W. testified that he was 21 years old and that, before being arrested, he lived with his sister. He admitted that he had been ordered to pay $173 per month in child support. G.W. stated that at the time of his arrest in April 2003, he was working for a man named Greg, removing carpets and taking up tile. He stated that he was earning $325 per week in cash. G.W. testified that he did not have $2,000 to pay the cash bond and that he did not have a bank account or any other assets.
On cross-examination, G.W. testified that he planned to get a job in order to support the child. However, he testified that he did not mail any letters to or attempt to contact any potential employers while he was incarcerated. G.W. admitted that he had not made a voluntary payment for child support since April 2002. He testified that when he was arrested in this child-support case, he was already incarcerated at the Birmingham jail, where he was being held on a charge of possession of cocaine.
G.W. testified that he had previously worked at a McDonald's fast-food restaurant, but he could not remember when he started that job or when he quit. He stated that his mother had filed a Chapter 13 bankruptcy petition on his behalf while he was incarcerated. The bankruptcy petition indicated that G.W. had $600 worth of home furnishings and $200 worth of clothes. However, G.W. testified that he did not have any furnishings or clothing. He also testified that his bankruptcy petition was dismissed because he failed to make any payments. G.W. later testified that he did not authorize an attorney to file a bankruptcy petition on his behalf, although an attorney had signed the petition on his behalf, and that the bankruptcy petition was filed "out of the clear blue."
G.W. testified that he did not own an automobile or a home. He stated that he lived with family members or in homeless shelters. G.W. stated he was expelled from high school in the eleventh grade and that he does not have a high-school equivalency degree.
At the June 26, 2003, hearing on G.W.'s petition, G.W.'s counsel argued that G.W. had presented his own testimony that he could not afford to pay child support and that no evidence had been presented by either the State or D.C. that G.W. had $2,000 in assets, and, therefore, he argued, the trial court should release G.W. The State and counsel for D.C. argued that the trial court was entitled to rule on G.W.'s credibility. In response, the trial court stated:
 "All right. You gentlemen have raised an interesting issue about, I think, credibility of the witnesses. Now, if, [G.W.'s counsel], if I accepted that — your argument that the Court should — these aren't your words I know, but accept without challenge testimony of a lone witness then I would not be necessary. If that be the case, you could proceed with an affidavit and a clerk could make a decision rubber stamping an order. I believe that as the trier of fact, a trial judge sitting without a jury has the same rights and responsibilities to judge the credibility of the witnesses. I believe that a trial judge can take into consideration the demeanor, the deportment, attitude of the witness. I don't think the trial judge, is charged with the responsibility whether it's one witness or a hundred witnesses to accept only words without considering other matters that counsel for [D.C.] brought up. I'll tell you also, the Court has a very clear *Page 810 
recollection — this case certainly does . . . turn on this, but has a very clear recollection that in October [2001], [G.W.] had to be cited by me for contempt of Court for an outburst here in this courtroom where he proceeded, not only to make insulting remarks in my presence and to be very disrespectful, but he was defiant and cursed sheriff's deputies. So I don't think this Court is a rubber stamp in this case. And I don't believe that we are holding his body illegally so I'm going to deny that petition."
While this appeal was pending, G.W. filed an emergency motion for a stay of further proceedings in the trial court and a motion for an immediate release from jail. This court ordered G.W. released from custody pending disposition of his appeal.
G.W.'s contention is that he does not have the present financial ability to comply with the trial court's order to pay $2,000 in order to purge himself of contempt. We agree with the trial court that it was within the trial court's discretion to determine whether it believed G.W.'s testimony concerning his present inability to purge himself of contempt. In Newman v.Sexton, 657 So.2d 894 (Ala.Civ.App. 1994), the father had been found in contempt for failure to pay child support in an earlier proceeding. Subsequently, the trial court ordered the father imprisoned for civil contempt until "`he makes an offer to purge that is acceptable to the Court.'" 657 So.2d at 895. The father filed a petition for the writ of habeas corpus, which the trial court denied. On appeal, the father argued that he was presently unable to satisfy his child-support obligations and that his petition should have been granted. This court, in affirming the judgment of the trial court, stated:
 "[The father] testified regarding two bank accounts in his control with balances totalling less than $200. He further testified that his mother is paying his legal expenses. On cross-examination, [the father] could not account for large sums of money he had deposited in and transferred among several foreign banks. Our review of the record, including transcripts from federal court proceedings in which [the father] was ultimately convicted of tax evasion, provides information which supports the trial court's determination that [the father] has access to sufficient assets to satisfy the support obligations. It is the duty of the trial court to resolve conflicting evidence, and its finding is presumed correct. Watkins v. Montgomery Days Inn, 455 So.2d 23 (Ala.Civ.App. 1984)."
657 So.2d at 895 (footnote omitted).
In the present case, there was evidence presented from which the trial court could have found that G.W. had $800 worth of assets, as stated in his bankruptcy petition.[3] However, that evidence is insufficient to show that G.W. has the present ability to pay the $2,000 he was ordered to pay in order to purge himself of contempt. Accordingly, the judgment of the trial court denying the petition for the writ of habeas corpus is reversed, and the *Page 811 
case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
CRAWLEY, J., concurs in the result, without writing.
[1] The five hearings were held pursuant to writs of attachment, issued by the trial court. Each writ ordered that G.W. be arrested unless he paid the cash bond amount set out in the writ; the cash bond amount set out in the writ; the cash bond amounts set out in the writs increased in accordance with the increasing amount of child support G.W. owed.
[2] Since 1994, all contempt proceedings in civil actions have been governed by Rule 70A, Ala. R. Civ. P. Rule 70A(g) provides that if a person found in contempt is in custody pursuant to that adjudication of contempt, review of that adjudication is by appeal unless the writ of habeas corpus is available, and that, if the person is not in custody, review of the adjudication of contempt is by appeal. As stated earlier, G.W. did not appeal from the trial court's contempt finding of April 29, 2002.
[3] The State contends that there was evidence from which the trial court could have found that G.W. had the ability to work, because he had worked at various jobs in the past, but that he was voluntarily unemployed. The State correctly argues that a finding of voluntary unemployment may support a finding of contempt. Cf. T.L.D. v. C.G., 849 So.2d 200 (Ala.Civ.App. 2002) (contempt finding for nonpayment of child-support obligation may be based on imputed income). However, although a person may be guilty of contempt, that person may not be imprisoned to coerce payment when he or she does not have the present ability to pay.Ex parte Talbert, 419 So.2d 240.