George W. Peterson appeals from the denial of his petition for a writ of habeas corpus. We reverse and remand.
On October 26, 2005, the trial court entered an order finding Peterson in civil contempt for failing to pay child support. The trial court ordered Peterson incarcerated until he paid $13,443.70, representing past-due child support and interest. On January 26, 2006, Peterson petitioned the trial court for a writ of habeas corpus, seeking his immediate release from incarceration given his inability to pay the pastdue child support. Following a hearing on Peterson's petition, the trial court entered an order on February 7, 2006, denying the petition. Peterson timely appealed.[1]
Peterson's sole contention on appeal is that the trial court committed reversible error by denying his petition for a writ of habeas corpus because, he argues, he established that he was unable to satisfy his court-ordered child-support obligation.
"Imprisonment for contempt should never be imposed by a judge where failure to pay [court-ordered support] is not from contumacy, but from inability to comply with the order." Exparte Talbert, 419 So.2d 240, 241 (Ala.Civ.App. 1982).
 "Incarceration on a finding of civil contempt is a sanction coercive in nature and is designed to compel compliance with the court's order. State v. Thomas, 550 So.2d 1067, 1073 (Ala. 1989). When the punishment no longer has any coercive effect, it becomes impossible to enforce. Id. `Because it is impossible to coerce that which is beyond a person's power to perform, once the confinement ceases to have any coercive impact, continued imprisonment for civil contempt constitutes a violation of due process.' Id. Therefore, although one may be guilty of contempt for failing to comply with a court's order imposing a child support obligation, `imprisonment as a means of coercing payment, may not be imposed if there is shown a present
inability to pay.' Ex parte Talbert, 419 So.2d at 241 (emphasis added)." *Page 950 
Savage v. Ingram, 675 So.2d 892, 894
(Ala.Civ.App. 1996).
At the time of the hearing on his habeas corpus petition, Peterson had been incarcerated for almost four months. Before his incarceration, Peterson had a job at which he earned an average of $10 per hour. As a result of his incarceration, Peterson lost his job. Shortly after he was incarcerated, Peterson's former employer contacted the work-release director for the Cullman County Correctional Facility, to determine if Peterson could return to work for the company while he was incarcerated. In response, Peterson's placement in the work-release program was expedited. Peterson participated in the work-release program for approximately six weeks before he was terminated from the program. According to the work-release director, Peterson was terminated from the work-release program after he had been found to have violated program rules.
Peterson testified that, at the time of the hearing on his habeas corpus petition, he had no cash or assets that he could liquidate to pay the child-support arrearage he owed. According to Peterson, he had $20 in his jail account. Peterson testified that he shares a house with his mother and that he owns the house but he has no equity in the house. According to Peterson, the house has an outstanding mortgage indebtedness of $48,000. Peterson testified that, before his incarceration, he paid a $400 monthly mortgage payment on the house. However, Peterson explained that he had been unable to make any mortgage payments on the house since his incarceration.
According to Peterson, his house was burglarized while he was incarcerated. Peterson testified that valuable personal items were stolen, including televisions, stereos, and air-conditioning equipment, among other things. Peterson did not know what personal items of his remained in the house. Peterson testified that he had no insurance on the contents of his house.
In addition to his house, Peterson testified that he owned a Toyota Celica automobile, the purchase of which he financed by borrowing from a friend. Peterson explained that he still owed $4,000 on the vehicle but that it was inoperable. Peterson testified that besides the child-support arrearage, his debt was limited to the mortgage indebtedness on the house and the outstanding loan amount owed on the vehicle.
On cross-examination, Peterson admitted that he was able to pay child support at the time he was found to be in contempt. Peterson explained that he chose not to pay child support because, he said, he had "just cause" for not paying it. Peterson excused his failure to pay child support, stating that at the time he was found in contempt for not paying child support he was able to provide only for his basic needs. Peterson further explained that he did not pay child support because the child's mother refused to allow him to visit the child.
The record indicates that during Peterson's participation in the work-release program, one payment of child support in the amount of $494.34 was made to the mother for the benefit of the child. Peterson testified that he gave his mother $790 of the remaining money in his jail account to help "save" his house from foreclosure. Peterson testified that he had arranged to work for a church once released from jail.
In Taylor v. Johnson, 764 So.2d 1281
(Ala.Civ.App. 2000), the trial court found Taylor in civil contempt for failure to pay child support, and it ordered him incarcerated until he paid $5,500. Taylor filed a petition for a writ of habeas corpus; the trial court subsequently denied the petition, *Page 951 
and Taylor appealed. This court reversed the trial court's judgment denying Taylor's petition, holding that the evidence presented before the trial court revealed that Taylor had no assets with which to pay the $5,500 in past-due child support.Taylor v. Johnson, 764 So.2d at 1282.
Similarly, in G.W. v. Sheriff of Jefferson County,885 So.2d 807 (Ala.Civ.App. 2004), the trial court found G.W. in contempt for failure to pay child support. The trial court initially set a cash bond in the amount of $2,550 in order for G.W. to purge himself of the contempt. After failing to appear at several hearings before the trial court, G.W. was arrested. The trial court found that G.W. owed $5,168.09 as a child-support arrearage and reduced the cash bond to $2,000. G.W. petitioned for a writ of habeas corpus, alleging he did not have the amount necessary to purge himself of contempt and, therefore, was unable to purge himself of contempt. Following a hearing, the trial court denied G.W.'s petition, and G.W. appealed. On appeal, this court reversed the judgment of the trial court based on the lack of evidence demonstrating that G.W. had a present ability to purge himself of contempt.G.W., 885 So.2d at 810.
In the instant case, Peterson's testimony revealed that he had assets that included $20 in his jail account, a house in which he has no equity, and various personal items, the most valuable of which had been stolen from his house. Although our review of the record reveals that Peterson had the ability to pay child support before he was found in contempt, Peterson's lack of assets and his removal from the work-release program effectively prevent him from ever purging himself of contempt. This court does not look favorably upon Peterson's unilateral decision to stop paying court-ordered child support. It is well settled that minor children have a fundamental right to support from their parents. Burkett v. Gresham, 888 So.2d 505
(Ala.Civ.App. 2004); Abel v. Abel, 824 So.2d 767
(Ala.Civ.App. 2001); Floyd v. Abercrombie,816 So.2d 1051 (Ala.Civ.App. 2001); Foster v. Foster,733 So.2d 454 (Ala.Civ.App. 1999). However, if Peterson remains incarcerated, the chances of the child's receiving support are nonexistent. Accordingly, the judgment of the trial court denying the petition for a writ of habeas corpus is reversed, and the case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY, P.J., and PITTMAN, MURDOCK, and BRYAN, JJ., concur.
[1] On February 21, 2006, shortly after Peterson appealed, this court granted Peterson's motion for immediate release from incarceration pending appeal.