MOORE, Judge.
Lee Carroll Richards ("the father") appeals from a judgment entered by the Morgan Circuit Court ("the circuit court") denying his petition for a writ of habeas corpus. We reverse the circuit court's judgment.
Facts and Procedural History
On January 21, 2016, the Morgan District Court ("the district court") entered a judgment, based on a stipulation of the father and the State Department of Human Resources ("DHR"), acting on behalf of Kimberly A. Wilson ("the mother"), the mother of the father's children, finding the father in civil contempt for his failure to pay child support as previously ordered. The father was sentenced to incarceration pending the payment of the $24,675.02 child-support arrearage amount established by the judgment; that sentence was suspended so long as the father made timely payments on the arrearage amount. On March 7, 2018, the district court, in a proceeding initiated by DHR on behalf of the mother, entered a judgment finding that the father was not in compliance with the January 21, 2016, judgment and requiring that the father be incarcerated and that the father pay $3,000 to purge himself of the contempt and to obtain a release from incarceration. That same day, the father filed in the circuit court a petition for a writ of habeas corpus, naming Ana Franklin, sheriff of Morgan County, as the respondent; however, attorneys for DHR represented "the respondent" and participated in that proceeding.
The circuit court conducted a trial on the father's petition on March 16, 2018. At that trial, the father introduced into evidence his affidavit of substantial hardship indicating that his monthly income is $2,588 and that his monthly expenses, excluding his child-support obligation, are *1188 $2,655. The father testified that his assets consist of an automobile worth between $300 and $400 and tools for his job. According to the father, he has no cash or bank accounts and lives "week to week."
Steve Namie, an employee of the Morgan County Sheriff's Department who runs the inmate work-release program, testified that, while incarcerated, the father would be eligible for the work-release program. He testified that transportation would not be provided but that the father's employer would be allowed to transport the father to and from work. Namie testified that he had not inquired as to whether the father's employer would agree to transport the father. There was no evidence indicating whether the father might be allowed to transport himself to and from work.
Following the trial, the circuit court entered an order that same day, denying the father's petition and stating, in pertinent part:
"After hearing on March 16, 2018, the Court finds [that the father] does have the present ability to pay child support. He has made an average of $2,000.00 per month over the last three (3) years. He lives in a nice home, 45 minutes away from where he is employed and spends $350.00 - $400.00 per month traveling to and from work. [The father] has 3 children and has only paid $330.60 throughout the entirety of 2017 toward his child support obligation. The Court is left to conclude that [the father] is purposefully living pay check to pay check for no reason other than to circumvent his obligation to pay support for his three (3) minor children."
The father filed his notice of appeal to this court on March 16, 2018. This court subsequently granted a motion filed by the father seeking his immediate release from incarceration pending the disposition of his appeal.
Discussion
On appeal, the father argues that the circuit court erred in denying his petition for a writ of habeas corpus because, he says, he lacks the present ability to purge himself of the contempt.
" 'Although one may be guilty of contempt, ... imprisonment, as a means of coercing payment, may not be imposed if there is shown a present inability to pay.' Ex parte Talbert, 419 So.2d 240, 241 (Ala. Civ. App. 1982). " 'Imprisonment for contempt should never be imposed by a judge where failure to pay [court-ordered support] is not from contumacy, but from inability to comply with the order.' " Taylor v. Johnson, 764 So.2d 1281, 1282 (Ala. Civ. App. 2000), quoting Ex parte Talbert, 419 So.2d at 241."
G.W. v. Sheriff of Jefferson Cty., 885 So.2d 807, 808-09 (Ala. Civ. App. 2004).
In G.W., this court addressed a situation similar to the one in this case. G.W. was found in contempt of court for his failure to pay court-ordered child support, and the court "issued a writ of attachment and set a cash bond in the amount of $2,550 in order for G.W. to purge himself of the contempt." 885 So.2d at 808. G.W. did not appeal the contempt judgment. G.W. was subsequently arrested, and, after a hearing, the trial court reduced the cash bond to $2,000. Id. G.W. filed a petition for a writ of habeas corpus, which was denied. G.W. appealed the denial of his petition to this court, and he subsequently filed a motion for his immediate release from incarceration, which this court granted pending a ruling on his appeal. In reversing the judgment denying G.W.'s petition for a writ of habeas corpus, this court held that, although "there was evidence presented *1189 from which the trial court could have found that G.W. had $800 worth of assets, as stated in his bankruptcy petition," "that evidence is insufficient to show that G.W. has the present ability to pay the $2,000 he was ordered to pay in order to purge himself of contempt." 885 So.2d at 810. This court noted that, although it had been argued that G.W. was voluntarily unemployed, which, if true, would support a finding of contempt, a contemnor still should "not be imprisoned to coerce payment when he or she does not have the present ability to pay." 885 So.2d at 810 n.3. Therefore, this court reversed the judgment denying G.W.'s petition for a writ of habeas corpus.
Similarly, in the present case, although the circuit court found, based on ore tenus testimony, that the father had the ability to pay his past-due child-support payments and was purposefully living "pay check to pay check," those findings support only the underlying finding of contempt. The judgment does not indicate that the father has $3,000 at his disposal with which to purge himself of contempt; in fact, the circuit court's specific finding that the father purposefully lives "pay check to pay check" would indicate that the father does not have more than one month's income accumulated that could be used to purge himself of contempt.
In the appellee's brief, which was filed by DHR, Mims v. Mims, 472 So.2d 1063 (Ala. Civ. App. 1985), and Watts v. Watts, 706 So.2d 749 (Ala. Civ. App. 1997), are cited in support of the argument that the circuit court could have determined that the father had the ability to pay the $3,000 required to purge himself of contempt. We note, however, that in both Mims and Watts there was evidence from which the trial court found an ability to pay. Specifically, in Mims, this court reasoned:
"The husband[, the contemnor,] contends that he owns no property and that the house where he stays, a motor home, a truck, and a boat, motor and trailer, are all items of property in his wife's name. The wife, however, is unemployed, and there was no evidence that she has any income.
"Additionally, there was testimony from the husband that he and his wife had recently taken two four-week vacations."
472 So.2d at 1064. This court determined that "the trial court could reasonably conclude from the evidence and inferences therefrom, coupled with the prior history of this case, that the husband has the ability to pay and could purge himself from the order of contempt." 472 So.2d at 1064-65.
Similarly, in Watts, the contemnor's "assertion that he no longer own[ed] the house in question was disputed by the introduction of his complaint for a divorce from his current wife," and "[t]he trial court also noted the discrepancy in the evidence regarding the consideration that [the contemnor] received for the sale of the house." 706 So.2d at 751. This court further noted that "the trial court found that [the contemnor] lacked credibility and believed that [the contemnor] had the ability to pay the amount ordered to purge himself of contempt." 706 So.2d at 752.
Unlike in Mims and Watts, the circuit court in the present case did not find that the father was untruthful in claiming that he lacked the ability to purge himself of contempt. Instead, the circuit court specifically found that the father did, in fact, live "pay check to pay check" purposefully.[1]
*1190 Because, like in G.W., the evidence in the record indicates that the father does not have the present ability to pay the amount required by the circuit court to purge himself of contempt, we conclude that the circuit court erred in denying the father's petition for a writ of habeas corpus.
Conclusion
Based on the foregoing, we reverse the circuit court's judgment and remand this cause for the circuit court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Thompson, P.J., and Pittman and Thomas, JJ., concur.
Donaldson, J., concurs specially.
DONALDSON, Judge, concurring specially.
I concur. I write specially to note that Lee Carroll Richards, the petitioner, was confined solely for civil contempt and not criminal contempt. "Civil contempt carries no definite term of imprisonment; the party jailed on a contempt ' " 'charge carries the [key] of his prison in his own pocket' [and] can end the sentence and discharge himself at any moment by doing what he had previously refused to do." ' " Davenport v. Hood, 814 So.2d 268, 273 (Ala. Civ. App. 2000) (quoting Johnson v. State, 675 So.2d 512, 513 (Ala. Crim. App. 1995), quoting in turn other cases). Therefore, a person jailed for civil contempt must know where the jail key is located (i.e., what the person must do to be released) and be able to reach the key (i.e., have the ability to comply with the terms of release).

We also note that, although there is evidence indicating that the father is eligible to participate in the work-release program, the father's eligibility for that program does not negate the evidence of his " 'present inability to pay' " the $3,000 required to purge himself of contempt. G.W., 885 So.2d at 808 (quoting Ex parte Talbert, 419 So.2d 240, 241 (Ala. Civ. App. 1982) ).