MOORE, Judge.
Reba Yarbrough (“the wife”) appeals from a judgment of the Calhoun Circuit Court divorcing her from D. Max Yar-brough (“the husband”) and dividing the marital property pursuant to a prenuptial agreement entered into by the parties. We reverse the trial court’s judgment.
The parties have previously been before this court. In Yarbrough v. Yarbrough, 142 So.3d 637, 638 (Ala.Civ.App.2013), this court outlined the procedural history of the case as follows:
“On December 13, 2010, the wife filed a complaint for a divorce, asserting that she and the husband had married on December 6, 1996, that no children had been born of the marriage, that the husband had committed acts of adultery, and that the marriage was irretrievably broken. The wife requested that the trial court grant her a divorce, equitably divide the marital property, and award her alimony and attorney’s fees.
“The husband filed an answer and a counterclaim for a divorce, asserting, among other things, that, on December 2, 1996, the parties had entered into a prenuptial agreement and that it governed the distribution of the parties’ property. The husband requested that the trial court grant the parties a divorce based on the irretrievable breakdown of the marriage and incompatibili *388 ty of temperament, ratify and confirm the prenuptial agreement and direct the parties to abide by that agreement, and award the husband attorney’s fees pursuant to the prenuptial agreement. The husband attached the prenuptial agreement as an exhibit to his pleading.
“On June 15, 2012, the trial court entered a judgment of divorce. In that judgment, the trial court found, among other things, that the prenuptial agreement was valid and enforceable, that, pursuant to the terms of the prenuptial agreement, the parties had agreed that their marriage would not alter their legal rights to dispose of their separate estates, that the parties had maintained separate checking accounts during the marriage, and that, before and during the marriage, the husband had owned and operated a business known as ‘Max Yarbrough Pools and Construction’ (‘the business’).
“Based on those findings, the trial court awarded the husband full right, title, ownership, possession, and control in and to the business, including the name, assets, accounts, investments, and receivables of the business and the inventory, vehicles, supplies, and equipment of the business. It awarded the wife a 2007 Honda Pilot automobile and the husband a 2009 Suzuki motorcycle, a 2007 Winnebago motor home, and red and silver Nissan trucks. Each party was awarded any checking and savings accounts, stocks, bonds, certificates of deposit, or 401k accounts that existed in his or her individual name, and the husband was awarded any such accounts in the name of the business. Both parties were awarded items of personal property and household furnishings pursuant to lists attached to the judgment. Additionally, the wife was instructed to prepare two lists of property from a third exhibit identifying, with certain exceptions, the parties’ jointly owned assets and to allow the husband to choose the list representing the items he elected to be awarded. Each party was directed . to pay and to be fully responsible for any debts in his or her name, and the husband was directed to be fully responsible for any debts in the name of his business. The trial court required each party to pay his or her own attorney’s fees and denied all other requests.
“The wife filed a motion requesting the trial court to reconsider its order, specifically disputing the award of assets acquired during the marriage. Both parties filed letter briefs with the court addressing the wife’s motion. The trial court granted the wife’s motion insofar as it requested that the Winnebago motor home be sold and the proceeds split equally between the parties; it otherwise denied the wife’s motion. On October 24, 2012, the husband-filed a motion for clarification regarding asserted errors in the wife’s property lists created from the third exhibit to the judgment. Specifically, the husband indicated that numerous items were omitted from the lists, that one item appeared on both lists, and that several items should not have appeared on the lists because they were tools of his business or because he had owned the items before the parties’ marriage.
“The wife filed an appeal to this court on November 13, 2012.”
In Yarbrough, before this court proceeded to the merits of the wife’s appeal, we determined that, because there had been no final disposition of the personal property, as evidenced by the husband’s motion requesting clarification regarding the wife’s proposed, lists of property and the lack of an order addressing that motion, the wife’s appeal was from a nonfinal judg *389 ment. 142 So.3d at 639. As a result, we dismissed the wife’s appeal. Id.
The trial court subsequently entered an order denying the husband’s motion for clarification and all other pending motions. The wife timely filed a notice of appeal to this court; this court has incorporated the record from Yarbrough into this appeal. That record reveals the following facts.
The husband testified that he and the wife were married in December 1996 and that there were no children of the marriage. The parties stipulated that they had signed a prenuptial agreement. The prenuptial agreement states that the husband has children by a prior marriage and that the wife has a child by a prior marriage; all the children had reached the age of majority at the time the prenuptial agreement was signed. The prenuptial agreement further states, in pertinent part:
“WHEREAS, it is desired by [the husband] and [the wife] separately and severally that their marriage shall not in any way change their presently-existing legal rights under the laws of the State of Alabama to dispose of their separate estates, and that, except as provided herein, the marriage of the parties shall not affect any rights of inheritance under the laws of the State of Alabama that the children of [the husband] may now have, whether by laws of intestacy, or testamentary disposition, or lifetime gifts in the property of [the husband]; and that the child of [the wife] may now have, whether by the laws of intestacy, or testamentary disposition, or lifetime gifts in the property of [the wife]; and “NOW THEREFORE, in consideration of the premises, and in consideration of the mutual covenants and agreements of each of the parties hereto, including their respective agreements to marry each other, and for other good and valuable consideration, receipt and adequacy of which is hereby acknowledged, the parties hereto agree as follows:
“1. The parties agree that all real and personal property listed in Exhibit ‘A’ shall be the property of [the wife] free and clear of any and all claims from [the husband] in the event of a divorce, death or legal separation.
“2. The parties agree that all real and personal property listed in Exhibit ‘B’ shall be the property of [the husband] free and clear of any and all claims from [the wife] in the event of a divorce, death or legal separation.
“3. The parties agree that in the event of a divorce or legal separation neither party shall pay alimony, periodic or lump sum to the other party.
“4. The parties agree that any and all real and personal] property acquired during this marriage shall be jointly owned and shall be subject to equal division in the event of divorce or legal separation.
“8. The parties agree that if either party contests this Agreement then, in that event, the contesting party or the estate of such party shall pay all expenses (including a reasonable attorney’s fee) of the party upholding this Agreement or attempting in good faith to uphold this Agreement.”
Exhibit “A” and Exhibit “B” are attached to the prenuptial agreement. Among those items listed as assets of the husband in Exhibit “B” are “Construction, Farm and Shop Equipment,” “House,” “Shop,” “John Deere Loader,” and a number of vehicles.
The husband testified that he no longer possessed several items listed in Exhibit “B.” For instance, he stated that a vehicle *390 listed in Exhibit “B” had been traded for another vehicle. He testified that he still had some of the items, however. The husband testified that he had purchased a Winnebago motor home in 2007, that it was brand new at the time, and that he had purchased it for $65,000, although it had listed for $96,000. He testified that he operated his pool and construction business out of his house and that the motor home was located in one of the buildings at his house.
The husband also testified that he owned several vehicles of varying values. He stated that he owned a 2007 Kubota tractor and a 1997 John Deere backhoe, that they were used when he purchased them, and that he had purchased them after the parties married. He stated that he used those items for his business and at his farm.
The husband testified that he had a checking account for his pool and construction business; he stated that the amount in that account varied between $20,000 and $100,000. He testified that he also had a personal money-market account. The husband testified that he and the wife had never had joint accounts. He stated that the wife had never made a deposit into or a withdrawal from his accounts and that he had never made a deposit into or a withdrawal from the wife’s accounts. The husband testified that he had made all the contributions to the wife’s individual retirement account.
The wife testified that she had not been privy to the husband’s finances. She testified that the husband’s name had always been on her accounts. She admitted, however, that she had refused to show the husband her “stubs” because she did not think it was necessary. She stated that “housing works best when one has their own account and the business has its own account. It just works best when you don’t have two people working out of the same account.” She testified that she had purchased all the groceries for the household. She stated that she also had paid for decorating, entertainment, and travel expenses. She testified that the husband had purchased all the vehicles during the parties’ marriage. She testified that the husband uses the backhoe, but not the Kubota tractor, in his business. She stated that he “sometimes” uses a dump truck and front-end loader in his business.

Discussion

The wife argues on appeal that the trial court erred in failing to give effect to the plain language of the prenuptial agreement and in failing to equally divide all the items purchased or acquired during the marriage, including the motor home, the vehicles, the John Deere backhoe, the Kubota tractor, and other items. She further argues that the trial court erred in failing to equally divide the “personal property and finances/money.”
“Whether the parties’ antenuptial agreement is ambiguous is a question of law, which we review de novo. Sec Meyer v. Meyer, 952 So.2d 384, 391 (Ala.Civ.App. 2006).
“ ‘To determine whether the ante-nuptial agreement is ambiguous, the trial court was required to review the agreement to determine if “ ‘the intent of the parties c[ould] be fairly and reasonably gleaned from the four corners of the document.’ ” Stacey v. Saunders, 437 So.2d 1230, 1234 (Ala. 1983) (quoting Schmidt v. Ladner Constr. Co., 370 So.2d 970, 972 (Ala. 1979))....
“ ‘The interpretation of a provision in an antenuptial agreement, like the interpretation of any provision in any contract, is a question of law for the trial court. Laney v. Laney, 833 So.2d 644, 646 (Ala.Civ.App.2002).’
*391 “Peden v. Peden, 972 So.2d 106, 110 (Ala.Civ.App.2007).
“ ‘An agreement that by its terms is plain and free from ambiguity must be enforced as written. Jones v. Jones, 722 So.2d 768 (Ala.Civ.App.1998). An ambiguity exists if the agreement is susceptible to more than one meaning. Vainrib v. Downey, 565 So.2d 647 (Ala.Civ.App.1990). However, if only one reasonable meaning clearly emerges, then the agreement is unambiguous. Id. Finally, if a provision of an agreement is certain and clear, it is the duty of the trial court to determine its meaning, and the court’s determination is afforded a heavy presumption of correctness and will not be disturbed unless it is clearly erroneous. Id.’
“R.G. v. G.G., 771 So.2d 490, 494 (Ala. Civ.App.2000).
“Furthermore, ‘Alabama appellate courts have stated that a court will not look beyond the four corners of a written instrument unless the instrument contains latent ambiguities.’ Judge v. Judge, 14 So.3d 162, 165 (Ala.Civ.App. 2009). See also Meyer v. Meyer, 952 So.2d at 391 (discussing the difference between latent and patent ambiguities).”
Hood v. Hood, 72 So.3d 666, 676-77 (Ala. Civ.App.2011).
The wife argues that the trial court failed to give effect to the plain language of the prenuptial agreement and that it failed to equally divide between the parties all the items that had been purchased or acquired during the marriage, in accordance with that agreement. We agree.
“Although the ore tenus presumption applies to the trial court’s findings of fact, no such presumption adheres to the trial court’s application of the law to those facts. Ex parte Agee, 669 So.2d 102, 104 (Ala.1995). The [parties’] arguments are based upon the interpretation of certain provisions and terms in the parties’ antenuptial agreement; such interpretations, like the interpretation of unambiguous contracts, are questions of law. See Agee, 669 So.2d at 105; Stacey v. Saunders, 437 So.2d 1230, 1233 (Ala. 1983).”
Laney v. Laney, 833 So.2d 644, 646 (Ala. Civ.App.2002). Viewing the prenuptial agreement at issue in this case, the parties agreed in the first part to maintain their rights to their individual estates existing at the time the parties married. Those individual estates consisted of the items listed in Exhibit “A” for the wife and in Exhibit “B” for the husband. In accordance with paragraph 4 of the prenuptial agreement, those items not listed in Exhibit “A” or Exhibit “B” that were acquired during the marriage are to be treated as jointly owned property to be distributed equally between the parties in the event of the parties’ divorce.
In making its property division, the trial court obviously emphasized the language in the first part of the prenuptial agreement in which the parties expressed their intention that their marriage would not alter their rights to “dispose of their separate estates.” Viewed in isolation, that phrase could reasonably be interpreted to mean that the parties intended that whatever property they presently owned or later acquired as individuals would remain part of their respective separate estates upon divorce or separation. However, like other written instruments, prenuptial agreements must be construed as a whole, with every provision given the fullest possible effect according to the intentions of the parties. See Stacey v. Saunders, 437 So.2d 1230 (Ala.l983); and Hubbard v. Bentley, 17 So.3d 652 (Ala. Civ.App.2008). If the first part of the parties’ prenuptial agreement means that *392 any property acquired during the marriage as part of a party’s separate estate remains that party’s separate property, that reading would render meaningless paragraph 4 of the prenuptial agreement, which specifically provides that “any and all real and person[al] property acquired during this marriage shall be jointly owned.” (Emphasis added.) That reading would also mean that the separate estates of the parties could not be divided, see Marsh v. Marsh, 496 So.2d 71 (Ala. Civ.App.1986) (court cannot divide property in separate estate of divorcing spouse), although paragraph 4 plainly states that the property the parties acquire during the marriage shall be “subject to equal division in the event of divorce or legal separation.” Our construction harmonizes the first part of the prenuptial agreement with paragraph 4 and makes all the terms operative.
The trial court correctly modified its judgment in response to the wife’s post-judgment motion to order the parties to sell the motor home and to divide the proceeds derived from the sale. With regard to the tractor, the backhoe, and four of the trucks owned by the husband, the trial court determined, based on the husband’s testimony and the portion of Exhibit “B” to the prenuptial agreement referring to “Construction, Farm and Shop Equipment,” “House,” “Shop,” “John Deere Loader,” and several named vehicles, that those items remained indivisible as part of the husband’s separate estate. The husband admitted, however, that those items had been purchased during the course of the marriage. Thus, they could not have been encompassed by the items listed in Exhibit “B,” but fell within the coverage of paragraph 4.
With regard to the remaining vehicles awarded, the wife received the Honda Pilot automobile, which the husband testified was worth approximately $13,000 to $15,000. The husband received a silver truck, which he testified was worth approximately $3,000, a red Nissan truck, which the wife alleged was worth $7,000, and a Suzuki motorcycle, which the husband testified was worth $4,000. The trial court equally divided those vehicles in accordance with the prenuptial agreement. The trial court erred, however, in failing to equally distribute the remaining assets of the parties that had been acquired during the marriage in accordance with paragraph 4 of the prenuptial agreement. See Hubbard, 17 So.3d at 654 (“[Tjrial courts may not dispose of property addressed in an antenuptial agreement in a manner that is inconsistent with that agreement.”). We therefore reverse the trial court’s judgment and remand the cause to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ„ concur.