MOORE, Judge.
This is the third time Reba Yarbrough (“the wife”) and D. Max Yarbrough (“the husband”) have been before this court. In Yarbrough v. Yarbrough, 142 So.3d 637 (Ala.Civ.App.2013) (“Yarbrough I”), this court outlined the procedural history of the case as follows:
“On December 13, 2010, the wife filed a complaint for a divorce, asserting that she and the husband had married on December 6, 1996, that no children had been born .of the marriage, that the husband had committed acts of adultery, and that the marriage was irretrievably broken. The wife requested that the [Calhoun Circuit Court (‘the trial court’) ] grant her a divorce, equitably divide the marital property, and award her alimony and attorney’s fees.
“The- husband filed an answer and a counterclaim for a divorce, asserting, *1047 among other things, that, on December 2, 1996, the parties had entered into a prenuptial agreement and that it governed the distribution of the parties’ property. The husband requested that the trial court grant the parties a divorce based on the irretrievable breakdown of the marriage and incompatibility of temperament, ratify and confirm the prenuptial agreement and direct the parties to abide by that agreement, and award the husband attorney’s fees pursuant to the prenuptial agreement. The husband attached the prenuptial agreement as an exhibit to his pleading.
“On June 15, 2012, the trial court entered a judgment of divorce. In that judgment, the trial court found, among other things,- that the prenuptial agreement was valid and enforceable, that, pursuant to the terms of the prenuptial agreement, the parties had agreed that their marriage would not alter their legal rights to dispose of their separate estates, that the parties had maintained separate checking accounts during the marriage, and that, before and during the marriage, the husband had owned and operated a business known as ‘Max Yarbrough Pools and Construction’ (‘the business’).
“Based on those findings, the trial court awarded the husband full right, title, ownership, possession, and control in and to the business, including the name, assets, accounts, investments, and receivables of the business and the inventory, vehicles, supplies, and equipment of the business.. It awarded the wife a 2007 Honda Pilot automobile and the husband a 2009 Suzuki motorcycle, a 2007 Winnebago motor home, and red and silver - Nissan trucks. Each party was awarded any checking and savings accounts, stocks, bonds, certificates of deposit, or 401k accounts that existed in his or her individual name, and the husband was awarded any such accounts in the name of the business. Both parties were awarded items of personal property and household furnishings pursuant to lists attached to the judgment. Additionally, the wife was instructed to prepare two lists- of property from a third exhibit, identifying, with certain exceptions, the parties’ jointly owned assets and to allow the husband to choose the list representing the items he elected to be awarded. :Each party was directed to pay and to be fully. responsible for any debts in his or her name, and the husband was directed to be fully responsible . for any debts in the name of his business. The trial court required each party to pay his or her own attorney’s fees and denied,all other requests.
“The wife filed a motion requesting the trial court to reconsider its order, specifically disputing the award of assets acquired during the marriage. Both parties filed letter briefs with the court addressing the wife’s motion. The trial court .granted the wife’s motion insofar as it requested that the Winnebago motor home be sold and the proceeds split equally between the parties; it otherwise denied the wife’s motion. On October 24, 2012, the husband filed a motion for clarification regarding asserted errors in the wife’s property lists created from the third exhibit to .the judgment. Specifically, the husband indicated that numerous items were omitted from the lists, .that one item appeared on both lists, and that several items should not have appeared on the lists because they were tools of his business or because he had owned the items before the parties’ marriage.
“The wife filed an appeal to this court on November 18, 2012.”
142 So.3d at 638-39. This court determined in Yarbrough I that the appeal had *1048 been taken from a nonfinal judgment, and we dismissed the appeal. Id. at 639-40.
In Yarbrough v. Yarbrough, 144 So.3d 386 (Ala.Civ.App.2014) (“Yarbrough II”), this court interpreted the parties’ prenuptial agreement, determining that the parties had agreed to maintain their rights to their individual estates existing at the time of their marriage and that those individual estates consisted of items listed in exhibits attached to the agreement. 144 So.3d at 391. We then concluded that, in accordance with the prenuptial agreement, those items not listed in the exhibits attached to the agreement that had been acquired during the marriage were “to be treated as jointly owned property to be distributed equally between the parties in the event of the parties’ divorce.” Id. This court further stated, in pertinent part:
“The trial court correctly modified its judgment in response to the wife’s post-judgment motion to order the parties to sell the motor home and to divide the proceeds derived from the sale. With regard to the tractor, the backhoe, and four of the trucks owned by the husband, the trial court determined, based on the husband’s testimony and the portion of Exhibit ‘B’ to the prenuptial agreement referring to ‘Construction, Farm and Shop Equipment,’ ‘House,’ ‘Shop,’ ‘John Deere Loader,’ and several named vehicles, that those items remained indivisible as part of the husband’s separate estate. The husband admitted, however, that those items had been purchased during the course of the marriage. Thus, they could not have been encompassed by the items listed in Exhibit ‘B,’ [the exhibit representing the husband’s property at the time of the parties’ marriage]....
“With regard to the remaining vehicles awarded, the wife received the Honda Pilot automobile, which the husband testified was worth approximately $13,000 to $15,000. The husband received a silver truck, which he testified was worth approximately $3,000, a red Nissan truck, which the wife alleged was worth $7,000, and a Suzuki motorcycle, which the husband testified was worth $4,000. The trial court equally divided those vehicles in accordance with the prenuptial agreement. The trial court erred, however, in failing to equally distribute the remaining assets of the parties that had been acquired during the marriage in accordance with ... the prenuptial agreement. See Hubbard [v. Bentley ], 17 So.3d [652] at 654 [ (Ala.Civ.App.2008) ] (‘[T]rial courts may not dispose of property addressed in an antenuptial agreement in a manner that is inconsistent with that agreement.’).”
Id. at 392. We reversed the trial court’s judgment and remanded the case to the trial court for it to conduct further proceedings consistent with this court’s opinion.
Following this court’s remand in Yar-brough II, the trial court entered a judgment on August 29, 2014, that, among other things, ordered that the following items be sold and the proceeds divided equally between the parties: (1) a 2007 Kubota tractor; (2) a 1997 John Deere backhoe; (3) a 2008 Honda Ridgeline vehicle; (4) a 2002 Nissan truck; (5) a 1999 Chevrolet truck; and (6) a 1985 C70 Chevrolet truck. Each of those items had been awarded to the husband in the trial court’s original divorce judgment. The trial court noted that, upon the sale of the Honda Ridgeline vehicle, the husband was to be reimbursed from the proceeds of the sale any sums that he had paid toward the loan on the vehicle from the date of the entry of the original divorce judgment until the date of the judgment being entered on remand.
*1049 On September 8, 2014, the wife filed a motion to amend the August 29, 2014, judgment. Specifically, the wife asserted, among other things, that the trial court’s judgment was inconsistent with this court’s remand instructions in Yarbrough II because, she said, it failed to address the following items, which, she asserted, should have also been subject to division by the trial court: (1) a 2008 Jeep Wrangler, (2) a checking account with a value of approximately $139,000, (3) a 650 Burgman motor scooter, and (4) a motorcycle trailer. The wife also asserted that the trial court had erred in ordering that the 2008 Honda Ridgeline vehicle be sold because both parties had testified that the wife would keep the Honda Pilot automobile and that the husband would keep the Honda Ridgeline vehicle. Additionally, the wife asserted that it was unjust and inequitable to order the items sold because, she argued, the value of those items might have diminished since the date of the original divorce judgment. The wife sought an order from the trial court valuing each of the items listed in the trial court’s judgment and the additional items identified in the wife’s post-judgment motion, with the exception of the 2008 Honda Ridgeline vehicle: The husband filed a response to the -wife’s motion to amend, in which he agreed with the wife that the trial court had erred in ordering the 2008 Honda Ridgeline to be sold. He asserted, however, that the trial court had not erred in ordering that the additional items of property be sold and the proceeds derived from the sales divided equally between the parties; that the husband’s checking account — i.e., the account the wife alleged was valued at approximately $139,000 — was not subject to division pursuant to the prenuptial agreement; and that the 2008 Jeep Wrangler should not be sold because it belonged to his son. The wife’s postjudgment motion was denied by operation of law on December 2, 2014. See Rule 59.1, Ala. R. Civ. P. The wife timely appealed.
The wife argues on appeal that the trial court erred, on remand from Yarbrough II, by failing to equally distribute the remaining assets of the parties. Specifically, she argues that the trial court erred by failing to include the 2008 Jeep Wrangler, the 650 Burgman motor scooter, and a motorcycle trailer in the items to be listed for sale. She argues also that the trial court erred in failing to divide the husband’s checking account.
With regard to the 2008 Jeep Wrangler, the husband testified that he had purchased that vehicle for his son and had titled the vehicle in his son’s name because the manufacturer had offered a lifetime warranty for the original owner. The husband stated that the title and the bill of sale were in his son’s name and that the vehicle tag was also registered in his son’s name. The wife’s attorney stated at the divoree trial that the wife did not dispute that the vehicle tag was in the son’s name. The wife testified, however, that the husband’s full name is Donald Max Yarbrough, that the husband’s son’s full name is Donald Eugene Yarbrough, and that the title of the Jeep Wrangler is in the name of “Donald Yarbrough.” The husband admitted at the divorce trial that he had been driving the vehicle, that, although he had purchased it for his son, he was keeping it because his son was in Oregon, and that his son could “have it when [the husband was] through with it.” The wife testified that the husband’s son had lived elsewhere since before she and the husband had married; she stated that the vehicle had been sitting at the marital home since 2008, when the husband had purchased it, and that the son had never come to claim it.
*1050 Because the evidence in this case was presented ore tenus, our standard of review is as follows:
“ ‘“ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the' judgment is palpably erroneous or manifestly unjust.”” Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘“The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the .facts.’ Waltman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007). The trial court determined in the present case that the 2008 Jeep Wrangler belonged to the husband’s son and that, as a result, it was not divisible' as marital property. Although this court might have reached a different coni elusion, the trial-court’s findings are supported by the evidence, and, .thus, we affirm the trial court’s decision, to exclude the 2008 Jeep Wrangler from division.
With regard to the 650 Burgman motor scooter, the husband testified that it was purchased during the marriage and the wife testified ‘ that she wanted the scooter sold and the proceeds from the sale divided equally between the parties. In the original divorce judgment, as discussed above, the trial court instructed the wife “to prepare two lists of property equally dividing in value ... the items listed on attached Exhibit 3 entitled Jointly Owned Assets -as Submitted by [the wife].” The husband was then instructed to choose which of the two lists contained the items he- elected to be awarded. Following the husband’s selection, the wife was instructed to remove from the marital home, within 30 days of the husband’s selection, the items included on the remaining list, which were awarded to her. The 650 Burgman motor scooter was listed on Exhibit 3 as being jointly owned property to be distributed. Because the scooter was one of many items to be distributed between the parties, we conclude that the trial court did not err by not ordering the scooter to be sold, Although the wife testified that it was her preference that the scooter be sold, the parties’ prenuptial agreement requires only that the property be distributed equally, not.that it be sold and the proceeds distributed. The wife has failed to assert on appeal that the trial court failed to equally distribute -certain items of jointly owned property in accordance with the trial court’s instructions.-in the original divorce judgment; -- thus, that issue is waived. See Pardue v. Potter, 632 So.2d 470, 473 (Ala.1994) (“Issues not argued in the appellant’s brief are waived.”). Because the trial court’s instructions with regard to the scooter allow for it to be included as part of an equal distribution of certain jointly owned property, the trial court did not err in failing to order that the scooter be sold.
The wife also asserts that the trial court erred in failing to divide the husband’s checking account. She argues that the husband’s checking account, which had a balance of $139,591.12 on February 18, 2011, should have been divided between the parties. The husband testified at the divorce trial that his personal account and *1051 his business account were one and the same. According to the husband, he had used the same bank account for over 30 years. The husband stated that he had had -his bank account both before and- after the marriage and that he did'not-remember the amount of funds-that-had been in the account in 1991. He- testified that he and the wife had never -had joint accounts. He stated that the wife had never made a deposit into, or a-withdrawal from, his account and that she had had separate accounts and that he' had never made' a deposit into, or a withdrawal from, those accounts. The wife' testifíéd that the husband “would not let [her] be privy to” his finances. She stated that the’ husband “was always on [her] account,” although, she admitted, she had refused to show him her “stubs” because, she said, she did not “think that it was necessary at the time.” She stated that “housing works best when ... you don’t have' two people working out of the samé account.”
The wife relies solely on the - parties’ prenuptial agreement as the basis for' the trial court’s ability to award her a Share of the husband’s checking account. In her reply brief to this court, the wife states that she “agrees that it is undisputed that the prenuptial agreement did not make any reference to the financial accounts or the business.” The wife also -testified at trial that finances and monetary assets were not mentioned in the prenuptial agreement. The prenuptial agreement provides that it is desired by the parties “that them marriage shall not in any way change their presently existing legal rights under the laws of the State of Alabama to dispose of their separate estates.” At trial, the trial court-indicated that the prenuptial agreement was silent as to monetary assets. It is clear that the trial court considered only tangible property, both real and personal, in dividing the parties’ assets pursuant to the prenuptial agreement.
The wife also argues in her reply brief to- this court that allowing for property that was' acquired before the marriage, but which does not appear on either exhibit attached -to the prenuptial agreement, to be-considered a part of either party’s separate estate is contrary to existing caselaw. Each of the cases cited by the wife, however, requires that the prenuptial agreement be’ enforced as written. As discussed previously, the wife admits in her reply brief to this court that the prenuptial agreement did not include any references to finances.
Moreover, in Yarbrough II, this court stated that those items not listed in the exhibits attached to the prenuptial agreement “that were acquired during the marriage are to be treated as jointly owned property to be distributed equally between the parties in the event of the parties’ divorce.” 144 So.3d at 391. We further stated that the 'trial court had erred “in failing to distribute the remaining' assets of the parties that had been acquired during the marriage” in accordance with the prenuptial agreement.’ 144 So.3d at 392. Clearly, both the prenuptial agreement and this court’s instructions in Yarbrough II limit the property to be divided to ásséts acquired during the marriage. The wife has failed to present evidence indicating the amount of the'funds in the husband’s checking account that was acquired during the marriage and the amount acquired before the marriage. Thus, the trial court could have determined that the funds in the husband’s checking account had not been acquired during the marriage and that they were to be distributed as part of the husband’s separate estate. See Meek v. Meek, 83 So.3d 541, 555 (Ala.Civ.App.2011).
The husband argues on appeal that the wife’s request for an equal distribution *1052 of his checking account amounts to a contest of the provision of the parties’ prenuptial agreement that states: “The parties agree that in the event of a divorce or legal separation neither party shall pay alimony, periodic or lump sum to the other party.” Pursuant to that portion of the prenuptial agreement stating that, if either party contests the prenuptial agreement, that party shall pay all expenses, including a reasonable attorney’s fee, of the party seeking to uphold the agreement, the husband requests an award of costs and attorney’s fees. We conclude, however, that the wife’s request for an equal distribution of property to include the husband’s checking account does not amount to a request for lump-sum alimony. Rather, the wife made arguments regarding the distribution of the husband’s checking account as personal property. Therefore, the husband is not entitled to an award of costs and attorney’s fees.
With regard to the motorcycle trailer, the wife testified at the divorce trial that there were two trailers and that she believed one was worth $10,000 and the other was worth $5,000. When asked how she had arrived at the estimate of $10,000 for the one motorcycle trailer, she stated that she “just thought [she had] heard that figure”, and that that was her opinion “in talking with [her] brother.” The wife testified that the trailer had been acquired after the parties were married. The husband testified that there was only one motorcycle trailer, that he wanted to give that trailer to the wife, and that he valued it at $1,500. The trial court awarded the trailer to the husband. The husband argues that the tidal court could have considered the value of the trailer to be offset by the sale of the 2008 Honda Ridgeline vehicle, which had previously been awarded to the husband. The Honda Ridgeline vehicle, however, had been purchased during the marriage, and, although the parties had agreed that the husband should retain that vehicle, the trial court ordered it sold; therefore, the amount of the wife’s share of the value of that vehicle did not offset the award of the trailer to the husband.[1] In Yarbrough II, we observed that the vehicles awarded to both parties had been divided in accordance with the prenuptial agreement, considering the value of the award of vehicles to the wife in the amount of $13,000 to $15,000 and the value of the award of vehicles to the husband in the amount of $14,000. 144 So.3d at 392. Based on the evidence presented, even using the upper limit of the value of the vehicles awarded to the wife (i.e., $15,000), which amounted to the wife’s receiving an award that is $1,000 greater that the husband’s award, and the husband’s testimony that the trailer was worth $1,500, rather than the $10,000 approximated by the wife, the husband would now be receiving $500 more than the wife. Accordingly, we reverse the trial court’s judgment on remand from Yarbrough II insofar as it failed to equally divide the motorcycle trailer, and we remand the cause to the trial court with instructions that it enter a revised judgment that includes a provision ordering that the motorcycle trailer be sold and that the proceeds derived from that sale be divided equally between the parties..
In her appellate brief to this court, the wife also “requests [that] the property *1053 values at the time of trial be used when dividing the assets as said items have depreciated in value and use of today’s values would be unjust and inequitable.” The wife fails to cite any authority in support of that “request,” however. Because the wife has failed to cite any legal authority in support of that request, we decline to consider the request. See Rule 28(a)(10), Ala. R.App. P.; and Crouch v. Allen, 76 So.3d 264, 266 (Ala.Civ.App.2011). For the reasons discussed above, the trial court’s August 29, 2014, judgment is affirmed in part and reversed in part, and the cause is remanded with instructions.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and DONALDSON, JJ., concur.

. We note that, although both parties agreed, following the entry of the trial court's judgment on remand from Yarbrough II, that the trial court had erred in ordering that vehicle sold, neither party has appealed that portion of the trial court’s judgment on appeal, Thus, any argument as to that issue is waived. " 'An argument not made on appeal is abandoned or waived.’ ” Muhammad v. Ford, 986 So.2d 1158, 1165 (Ala.2007) (quoting Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1124 n. 8 (Ala.2003)).