THOMPSON, Presiding Judge.
Randall Hogan (“the husband”) appeals from a judgment of the Cullman Circuit Court (“the trial court”) divorcing him from Darlene Marie Hogan (“the wife”). On appeal, the husband challenges, among other things, certain provisions of the judgment that he claims are contrary to a prenuptial agreement (“the agreement”) the parties had entered on April 2, 2008.[1]
“ ‘Although the ore tenus presumption applies to the trial court’s findings of fact, no such presumption adheres to the trial court’s application of the law to those facts. Ex parte Agee, 669 So.2d 102, 104 (Ala.1995). The [parties’] arguments are based upon the interpretation of certain provisions and terms in the parties’ antenuptial agreement; such interpretations, like the interpretation of unambiguous contracts, are questions of law. See Agee, 669 So.2d at 105; Stacey v. Saunders, 437 So.2d 1230, 1233 (Ala.1983).’
“Laney v, Laney, 833 So.2d 644, 646 (Ala.Civ.App.2002).”
Yarbrough v. Yarbrough, 144 So.3d 386, 391 (Ala.Civ.App.2014).
In the judgment, the trial court made specific findings of fact, including the finding that the parties had entered into the agreement. The trial court included certain terms of the agreement in its findings, including the provision that the parties “waive[d], release[d], and relinquish[ed] any and all claims and rights of every kind, nature or description, whether legal or equitable, which they may have against the other’s separately owned property, as such property shall exist at the time of such dissolution [of the marriage], including” among other things, claims for “attorney’s fees, court costs, and other fees or expenses incurred as a result of the divorce or dissolution.” After making that explicit finding, however, without explanation, the trial court awarded the wife an attorney fee of $3,500.
The husband contends that the trial court’s award of a $3,500 attorney fee to the wife violates the agreement. In the context of construing a prenuptial agreement, this court has held that ‘““[a]n agreement that by its terms is plain and free from ambiguity must be enforced as written.” ’ ” Yarbrough, 144 So.3d at 391 (quoting Hood v. Hood, 72 So.3d 666, 677 (Ala.Civ.App.2011), quoting in turn R.G. v. G.G., 771 So.2d 490, 494 (Ala.Civ.App.2000), citing in turn Jones v. Jones, 722 So.2d 768 (Ala.Civ.App.1998)(emphasis added)). There is no contention that the provision at issue is ambiguous. In Ex parte Walters, 580 So.2d 1352, 1355 (Ala.1991), our supreme court held that when “a provision of a valid ante-nuptial agreement specifically states that attorney fees will be waived in the. event of a divorce, a trial court cannot award attorney fees unless it would be inequitable and unjust to enforce that provision.”
The four pages of factual findings the trial court set out in its judgment provide no basis for a conclusion that it *53 would be inequitable and unjust to enforce the -provision of the agreement in which each party relinquished any right he or she might have had to an attorney fee. In her brief on appeal, the wife argues that, in this ease, it would be inequitable to enforce the provision because, she says, the husband engaged in conduct that prolonged the litigation. The wife asserts that the husband “purposefully continue[d] the case by firing his attorneys” and by failing to comply with her discovery requests. The trial court, however, made no such finding.
Moreover, we note that the wife’s argument on appeal was never made to the trial court. In his special writing, Judge Moore states that this court must assume that the trial court impliedly made findings of fact necessary to sustain its award of an attorney fee; however, no evidence was taken on the issue of whether enforcement of the provision at issue would be inequitable and unjust, and no argument was made to the trial court as to that issue. Thus, it defies logic for the court to assume that the trial court impliedly made those findings of fact necessary to sustain its judgment when the trial court had no evidence as to this issue before it.
Furthermore, out of an abundance of caution, we note that the record indicates that the husband did, as the wife states, terminate the services of four attorneys between the filing of the complaint in December 2012 and the February 10, 2015, trial. However, the record also indicates that the first circuit judge assigned to hear the case had a business relationship with the wife’s attorney, which was expected to end soon. The case was temporarily reassigned to another judge, but then was returned to the original judge. However, the original judge learned that she had a relative who had prepared the agreement in this case; therefore, she recused herself, and the case was again reassigned. The. presiding circuit judge also recused himself from the case for a reason that is not clear from the record. Because both of the circuit judges eligible to hear the case had recused themselves, on June 9, 2014, the presiding circuit judge appointed a district-court judge to serve as ex officio circuit judge to hear this case. Because of the number of times this matter was reassigned, there were delays in the trial court’s consideration of some motions, including those filed by the wife. There is no evidence; to support a finding, to the extent such a finding can be implied in the judgment, that the number of delays in the litigation of this matter were caused primarily by the husband’s conduct. Pursuant to Yarbrough, the trial court was bound to enforce the agreement as it was written, just as it would be bound to enforce any other contract. After finding that the parties had entered into the agreement, the trial court made no findings of fact that the agreement, or any part of the agreement, was invalid or unenforceable. Accordingly, the trial court was bound to enforce the terms of the agreement as written, and the trial court’s award of an attorney fee to the wife must be reversed.
The husband also contends that the trial court improperly ordered him to “reimburse” the wife for the entire amount of the health-insurance premiums she paid— which provided insurance coverage to both the husband and the wife — during the pen-dency of the divorce action. The husband claims that he should not be required to repay those premiums, in their entirety because, he says, the repayment constitutes a form of spousal support in the nature of periodic alimony, which the parties specifically waived in the agreement. As the trial court pointed out in its judgment, whether the wife was to be reim *54 bursed for the health-insurance premiums she paid on behalf of the husband was an issue expressly before the court.
The husband’s argument is based upon the interpretation of certain provisions and terms in the agreement; such interpretations, like the interpretation of unambiguous contracts, are questions of law. Laney v. Laney, 833 So.2d 644, 646 (Ala.Civ.App.2002) (citing Ex parte Agee, 669 So.2d 102, 105 (Ala.1995), and Stacey v. Saunders, 437 So.2d 1230, 1233 (Ala.1983)). See also Peace v. Peace, 137 So.3d 905, 909 (Ala.Civ.App.2012) (holding that the issue of whether the obligation to provide a former spouse with health-insurance coverage con-stitutés spousal support in the nature of periodic alimony is a question of law).
In Peace, this court held that an
“award to the former wife of health-insurance coverage constituted spousal support in the nature of periodic alimony because the award was intended to compensate the former wife for a routine living expense and thereby to equalize the apparent disparity in the parties’ incomes, not to award her property.”
Id. at 910.
In this case, the trial court ordered the husband to “reimburse” the wife for health-insurance premiums “paid on his behalf’ in the amount of $3,536. That amount represents the total amount of the premiums paid for coverage of both the husband and the wife from the time the parties separated in November 2012. The wife testified that she added the husband to her health insurance plan soon after the parties married. Evidence presented at the trial demonstrated that, since the husband filed his complaint for a divorce in December 2012, the premiums for the health- insurance covering both the husband and the wife were $178 per pay period. The wife was paid twice a month. The wife testified that, once the husband is no longer included under her health-insurance policy, her premium will be $150 per pay period. Therefore, to provide coverage to the husband, the wife had paid an additional $56 a month more than what she would have paid to insure only herself. Furthermore, we note that on August 20, 2014, the wife moved for permission to remove the husband from her policy. That motion was denied on August 29, 2014.
Under the terms of the agreement, the parties waived any claims and rights “of every kind, nature or description, whether legal or equitable, which they may have against the other’s separately owned property” including claims for alimony, support, maintenance, and “all other funds or allowances which might otherwise accrue as a result of the dissolution of the marriage.” We agree with the husband that, in light of the agreement, the trial court erred in ordering the husband to repay the wife the entire amount of the health-insurance premiums the wife paid during the pendency of the divorce action. Instead, he should be required to reimburse the wife only for that portion of the premiums attributable to his coverage. For the same reason, the wife is entitled to be reimbursed the $56 a month she paid on the husband’s behalf during the pendency of the divorce action. It appears that the trial court made a computational mistake in deciding this issue. Accordingly, that portion of the judgment ordering the husband to repay the wife the entire amount of the health-insurance premiums paid during the pendency of the divorce action is reversed. On remand, the trial court should enter a judgment ordering the husband to repay the wife that portion of the premiums attributable to his coverage under the wife’s health-insurance policy.
The husband argues that the trial court erred in awarding the wife the parties’ two *55 dogs. He contends that one of the dogs was given to him as a gift and is therefore part of his separate property. He also asserts that, because both dogs lived with him from November 2012, when the wife moved out of the marital residence, until the trial in February 2015, he is the “proper owner” of both dogs.
At trial, the evidence regarding ownership of the dogs was disputed. Thus, the trial court was called on to decide questions of fact to determine whether one or both of the dogs were the property of the husband or the wife. Accordingly, the ore tenus standard of review is applicable to this issue.
“ ‘A divorce judgment that is based on evidence presented ore tenus is afforded a presumption of correctness. Brown v. Brown, 719 So.2d 228 (Ala.Civ.App.1998). This presumption of correctness is based upon the trial court’s unique position to observe the parties and witnesses firsthand and to evaluate their demeanor and credibility. Brown, supra; Hall v. Mazzone, 486 So.2d 408 (Ala,1986). A judgment of the trial court based on its findings of facts will be reversed only where it is so unsupported by the evidence as to be plainly and palpably wrong. Broim, supra. However, there is no presumption of correctness in the trial court’s application of law to the facts. Gaston v. Ames, 514 So.2d 877 (Ala.1987).’
“Robinson v, Robinson, 795 So.2d 729, 732-33 (Ala.Civ.App.2001).”
Bonner v. Bonner, 170 So.3d 697, 702 (Ala.Civ.App.2015).
The evidence is undisputed that the wife entered the marriage with a Pomeranian/Shih Tzu mix named Cricket. During the marriage, the parties were given a Chihuahua named Token. The wife testified that Token had belonged to her niece and her niece’s husband. The wife said that the niece had told her that the niece’s husband “wasn’t being nice” to Token and had asked whether the wife could take the dog. The wife testified that she spoke with the husband, who said it would be okay if they took the dog, so they took Token to live with them.
The niece’s husband worked for the husband. At the trial, when the niece’s husband was asked to whom he had given Token, he said: “Well, [the husband], I believe.” The following discussion also took place between the niece’s husband and the wife’s attorney on cross-examination:
“Q.: Now, isn’t it true you gave [Token] to both?
“A.: She got it for [the husband].
“Q.: Okay, then you didn’t give it to [the husband]?
“A.: Yes, I said [the husband] can have the dog. It’s what I told my wife.
“Q.: But—
“A.: You weren’t there.
“Q.: But I’m asking — you said you gave it to [the husband]?
“A.: I did.
“Q.: You said. Now your testimony is—
“MR. BROCK [the husband’s attorney]: Objection, Your Honor, argumentative.
“THE COURT: Go on.
“Q.: — that you said [the wife] got it for—
“A.: She might have picked it up for [the husband], but the dog—
“Q.: [Were] you thex-e for the conversation between them over the dog?
“A.: What do you mean?
“Q.: Were you there and heard the conversation between—
“A.: When?
*56 “Q.; — her and [the husband] about the dog?
“A.: Were you?
“Q.: I’m asking the question. You’re on the stand.
“A.: Okay. Well, no, I wasn’t.
“Q.: Okay. Thank you.
“A.: But I know who I gave the dog to.
“Q.: Your testimony—
“THE COURT: Just answer the questions.
“A.: Yes, I gave the dog to [the husband].
“Q.: You gave it to him personally?
“A.: Yes, ma’am.
“Q.: Did you not just testify that you— “A.: I didn’t hand it to him, no.
“Q.: Okay. So. who did you give the dog to?
“A.: I didn’t give it to no one. I guess [the wife] came and got it.
“Q.: Okay. You didn’t give it to anybody is now your testimony?
“A.: I gave ownership to them.
“Q.: To them. Thank you.
“A.: Well, no.
“Q.: Thank you. I appreciate it.”
The husband’s attorney made no effort to clarify the niece’s husband’s testimony by redirect examination.
When the wife left the marital residence in November 2012, she left both dogs with the husband. The wife said that she moved into an apartment and was unable to take the dogs with her. The husband testified that, at that time, the wife said she would see if she' could find a home for the dogs. He told her he would take the dogs, and she told him: “[W]ell, good.” However, the wife testified that the husband called her in late November or early December[2] and told her that if she did not come get the dogs, he would “drop, them off at [her] place.” The wife also testified that the husband had not let her retrieve the dogs. The husband testified that he did not recall placing a telephone call to the wife asking her to pick up the dogs. Regardless, at the time of the trial in February 2015, the husband still had both dogs. As mentioned, the trial court awarded both dogs to the wife.
Alabama law has long held that dogs are property. Parker v. Mise, 27 Ala. 480, 483 (1855); Alabama Great S. R.R. v. Wedgworth, 208 Ala. 514, 94 So. 549 (1922). The question of who owns a pet has evolved since those early cases, however. This court recognized that evolution in discussing the concept of “ownership” of a pet in Placey v. Placey, 51 So.3d 374, 378-79 (Ala.Civ.App.2010), writing:
“Although our state has several laws dealing with animals, and dogs in particular, some of which involve the liability of an owner of an animal'for damage or injury caused by it, only one statute defines ‘owner’ — the statute concerning rabies, Ala.Code 1975, § 3-7A-1 et seq. Section 3-7A-l(9) defines ‘owner’ as ‘[a]ny person having a right of property in a dog, cat, ferret, or other animal, or who keeps or harbors the animal, or who has it in his or her care, or acts as its custodian, or who permits the animal to remain on or about any premises occupied by him or her.’ The breadth of this definition is necessitated by the purpose of the statute, which is to assure the immunization of household pets against rabies in order to protect the public health and welfare. However, it is instructive to note that ownership of an *57 animal involves more than a mere right of property in an animal.
“‘Mere documentary title is not conclusive of ownership of an animal. A Certificate of registration creates only prima facie presumption of title which can be rebutted by other competent evidence of actual ownership of a dog.
“ ‘A dog is a corporeal movable, the ownership of which is presumed to be in the person who possesses it.
“‘Broadly speaking, the burden of proving ownership of animals rests upon the party asserting ownership. Exclusive possession of an animal for a period of time is presumptive evidence of ownership thereof, and long possession of animals is strong evidence of ownership....
“ ‘Ownership may be shown by any competent evidence.’
“4 Am.Jur.2d Animals § 5 (2007) (footnotes omitted).”
The evidence in support of the husband’s contention is that he has had possession of both dogs since November 2012 and that the niece’s husband gave Token to him. The evidence in support of the wife’s contention is that she had Cricket when she married the husband and that her niece and the niece’s husband gave Token to both parties. The niece’s husband’s testimony regarding to whom he gave Token was far from definitive, and the trial court could have believed that Token had been given to both the husband and the wife. Alternatively, the trial court could have concluded that, regardless of the original intent in making a gift of Token, the dog now belonged to the wife. The wife further testified that, when the wife left the marital residence, she was unable to take the dogs with her and that the husband has not allowed her to retrieve the dogs.
We note, however, that when the wife left the marital' residence she was going to find new homes for the dogs because, she said, she had moved into an apartment and was unable to take the dogs with her. At trial, the wife presented no evidence indicating that her circumstances had changed since she left the dogs with the husband. In other words, there was no evidence indicating that, at the time of the trial, the wife lived in a location that would allow her to have the dogs. There is also no evidence in -the record to suggest that, during the ‘pendency of the divorce action, the wife sought court intervention to regain possession of the dogs.
Based on the presumption stated in Pla-cey, supra, that the ownership of a pet is presumed to be in the person who possesses it, and given the wife’s failure to present evidence indicating that she was in a position to take the dogs, we conclude that the evidence doés not support the trial court’s decision to award the dogs to the wife. Accordingly, that portion of the judgment awarding the dogs to the wife is reversed.
Finally, the husband contends that the trial court erred in reassigning this case to a district-court judge after both circuit judges, including' the presiding circuit judge, had already recused themselves from this case. In. his appellate brief, the husband concedes that he failed to raise this issue in the trial court, “‘[I]t is a well-settled'rule that an appellate court’s review is limited to only those issues that were raised before the trial court. Issues raised for the.first time on appeal cannot be considered.’ ” Neal v. Neal, 856 So.2d 766, 778 (Ala.2002) (quoting Beavers v. County of Walker, 645 So.2d 1365, 1372 (Ala.1994)). Nonetheless, thp,..husband says, “such error is surely excusable given the extensive and complex history of this case,” by which he appears to mean the *58 number of attorneys who attempted to represent the husband and the number of times this case was reassigned to different judges in the trial court. The husband fails to cite any authority that would allow this court to consider an issue that was not first presented to the trial court. Rule 28(a)(10), Ala. R.App. P., requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived. See White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008). Because “[i]t is well settled that an appellate court may not hold a trial court in error in regard tp theories or issues not presented to that court,” Allsopp v. Bolding, 86 So.3d 952, 962 (Ala.2011), we will not reverse the judgment of the trial court on this ground. However, we caution bench and bar that this is not to be read as an endorsement of the presiding circuit judge’s reassignment of the case after he had recused himself in this matter. For a discussion of the appropriate procedure to be followed in reassigning a case when the presiding judge of a judicial circuit has been disqualified from a case, either voluntarily or by objection, see Ex parte Jim Walter Homes, Inc., 776 So.2d 76, 79-80 (Ala.2000).
For the reasons set forth above, we reverse those portions of the judgment awarding the wife an attorney fee and awarding her possession of the dogs. We also reverse that portion of the judgment ordering the husband to reimburse the wife the entire amount of the health-insurance premiums she paid for health insurance that covered' both parties. We remand the cause for the trial court to determine the portion of the health-insurance premiums attributable to the husband and to enter an order directing the husband to reimburse the wife that amount.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
THOMAS, J., concurs.
PITTMAN, J., concurs in the result, without writing.
MOORE and DONALDSON, JJ., concur in part and dissent in part, with writings.

. Contrary to the husband's implied assertion on appeal that, at trial, there was a question as to the validity of the agreement, our review of the record indicates that such was not the case. The record demonstrates that the wife requested certain property pursuant to the agreement. In her appellate brief, the wife acknowledges that she did not challenge the validity of the agreement. Moreover, in the judgment, the trial court found that the parties had entered into the agreement, and it made no finding that the agreement was invalid. It is well established that only adverse rulings by a trial court are appealable. Satterwhite v. Rodney Byrd Millenium Props., Inc., 181 So.3d 890, 896 (Ala.Civ.App.2015).

, The wife did not indicate the year the husband called her, and we are unable to determine the year from the context of the-question and answer.